BOARD OF POLICE COMMISSIONERS OF THE CITY OF NEW HAVEN ET AL. *v.* WILLIAM WHITE ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

554

Argued March 2—decision released September 14, 1976

*Arnold J. Bai*, with whom was *Paul E. Pollock*, for the appellant (named plaintiff).

*Donald G. Walsh*, with whom was *Jeffrey Rozen*, and, on the brief, *T. Paul Tremont* and *William M. Mack*, for the appellees (defendants).

*Robert W. Murphy*, assistant attorney general, for the appellee (defendant board of mediation and arbitration).

House, C. J. This is an action seeking a temporary and permanent injunction restraining and prohibiting the defendants, William White, Ralph DiNello, and New Haven Police Union Local No. 530 of the Connecticut Council of Police Unions No. 15, from initiating "and/or" proceeding with any arbitration action before the defendant Connecticut board of mediation and arbitration or any other body in any way related to orders of dismissal of

the defendants White and DiNello from the New Haven police department. The plaintiffs are the board of police commissioners of the city of New Haven, hereinafter called police commissioners, and the city of New Haven which intervened, claiming that its position and that of the police commissioners are analogous. The case was presented to the trial court on a stipulation of facts and memoranda of law.

The facts may be summarized as follows: The plaintiff board of police commissioners is an administrative body whose six members are appointed pursuant to the charter of the city of New Haven. The charter charges the police commissioners with the administration, operation and control of the department of police service of the city of New Haven and empowers them to appoint, recommend the pay of, define the duties of, promote, *remove,* reduce in rank, and suspend officers of the New Haven police department and to make all rules necessary for the proper government of the police department. Prior to February 26, 1973, the defendants William White and Ralph DiNello were police officers in the city of New Haven. On or about January 4, 1972, Biagio DiLieto, in his capacity as chief of police of the city of New Haven, presented to the police commissioners charges of misconduct against White and DiNello arising out of their duties as police officers. Following numerous hearings, at which White and DiNello were represented by counsel, and after deliberation and consideration of the evidence, which included testimony covering 1956 pages of transcript, the police commissioners, on February 26, 1973, found the defendant White guilty of procuring a false statement in connection with a police departmental inves-

tigation of his activities, found the defendant DiNello guilty of falsifying an arrest report in order to strengthen the alleged case against the arrestee, and ordered both defendants dismissed from the New Haven police department. Both defendants, pursuant to § 129 of the New Haven charter, took appeals which are presently pending before the Court of Common Pleas. On or about March 9, 1973, the defendant union, on behalf of White and DiNello, initiated a grievance proceeding pursuant to the provisions of article 3 of an existing collective bargaining agreement between the union and the city of New Haven. The specific grievance claimed was the discharge of White and DiNello by the police commissioners, and the union sought arbitration of that alleged grievance by arbitrators appointed by the defendant state board of mediation and arbitration. The union claimed that the decision of the arbitrators would be binding on the police commissioners. At no prior time had a dismissed police officer sought to invoke the grievance procedures provided in the collective bargaining agreement. On April 9, 1973, the police commissioners brought this action seeking to enjoin the defendants from initiating or proceeding with any such arbitration and, on June 21, 1973, the city of New Haven filed an intervening complaint seeking the same relief. The court rendered judgment for the defendants and denied the plaintiffs' prayers. for relief.

From this judgment the plaintiffs have appealed, assigning as error the finding of various facts, the reaching of certain conclusions and the overruling of claims of law made by the plaintiffs. Some of the assignments of error have not been briefed and are treated as abandoned. *Ruick* v. *Twar-*

*kins,* 171 Conn. 149, 151, 367 A.2d 1380. The defendants have briefed for this court claims that the plaintiffs had waived any claim of illegality as to the collective bargaining agreement and that the court erred in overruling their plea in abatement addressed to the capacity of the plaintiffs to bring this action. They did not file an assignment of errors and a cross appeal and we do not consider the merits of these contentions. Practice Book § 607; *Akin* v. *Norwalk,* 163 Conn. 68, 70, 301 A.2d 258. In any event, since the city of New Haven intervened as a party plaintiff and joined in the prosecution of the action the contention of the defendants as to the lack of standing of the police commissioners would appear at this point to be of only academic interest.

The plaintiffs' first contention is that the trial court erred in not considering the plaintiffs' claims (1) that the proposed arbitration proceeding is not authorized by the collective bargaining agreement with the union, and (2) that the defendant state board of mediation and arbitration has no statutory authority to arbitrate the matter. In its finding, the court stated as a conclusion that these claims were not considered because "such claims were neither pleaded nor presented at the trial." An examination of the pleadings discloses that the court properly did not consider the claim that the state board of mediation and arbitration lacked statutory authority to arbitrate the matter because the pleadings do not raise that issue. It does appear that the plaintiffs' trial memorandum of law contained some reference to that question but the issue was not raised by the pleadings. "It is imperative that the court and opposing counsel be able to rely on the statement of issues as set forth in the plead-

ings. *Rose* v. *Van Bosch,* 119 Conn. 514, 518, 177 A. 565." *Lesser* v. *Altnacraig Convalescent Home, Inc.,* 144 Conn. 488, 491, 133 A.2d 908.

An examination of the pleadings and record reveals a more ambiguous situation with respect to the trial court's consideration of the provisions of the collective bargaining agreement relative to arbitration. The complaint and special defenses refer only vaguely to the contract issue. On the other hand, the stipulation of facts made specific reference to the contract stating that the agreement was left to speak for itself. Furthermore, despite the court's conclusory disavowal of consideration of the question whether the proposed arbitration proceedings were authorized by the collective bargaining agreement, the court did find as a fact that "[t]he provisions of the Union agreement, Exhibit A, defining discharge of a police officer to constitute a grievance and providing for binding arbitration of such a grievance before the defendant Connecticut Board of Mediation and Arbitration, are in conflict with the power of plaintiff Board of Police Commissioners to remove police officers." The court also expressly stated in its memorandum of decision, which we may consult for a better understanding of the basis of its decision; *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 120, 318 A.2d 84; *Rosenberg* v. *Planning Board,* 155 Conn. 636, 643, 236 A.2d 895; that "[i]t is clear to this court from the language of the Union contract that binding arbitration of a discharge agreement [sic] is allowed in the Union contract." We conclude, despite the ambiguity, that the court did consider the contract, interpreted it to provide for arbitration and then proceeded to decide the claims before it.

The plaintiffs next contend that the city of New Haven had no authority to enter into a contract providing for binding arbitration of a discharge grievance. They properly assert that the city is a creature of the state and " 'can exercise only such powers as are expressly granted to it, or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation.' *Baker* v. *Norwalk,* 152 Conn. 312, 314, 206 A.2d 428." *Avonside, Inc.* v. *Zoning & Planning Commission,* 153 Conn. 232, 236, 215 A.2d 409. Under § 7-469[1] of the General Statutes, however, a municipal employer such as the city of New Haven has the duty to bargain collectively with designated employee organizations and by the terms of § 7-470 (c) that includes the duty to bargain "with respect to wages, hours and other conditions of employment." The broad statutory term "conditions of employment" may be construed to include the question whether a person shall continue in employment; cf. *Fibreboard Paper Products Corporation* v. *National Labor Relations Board,* 379 U.S. 203, 85 S. Ct. 398, 13 L. Ed. 2d 233; it has been held by at least one court to apply to a discharge; *Local 1401, Retail Clerks International Assn.* v. *Woodman's Food Market, Inc.,* 371 F.2d 199 (7th Cir.) ; and it may include grievance procedures. See *Norwalk Teachers' Assn.* v. *Board of Education,* 138 Conn. 269, 278, 83 A.2d 482. Of particular significance, indicative of the statutory intention in the use of the term "conditions of

---

[1] "[General Statutes] Sec. 7-469. DUTY TO BARGAIN COLLECTIVELY. The municipal employer and such employee organization as has been designated as exclusive representative of employees in an appropriate unit, through appropriate officials or their representatives, shall have the duty to bargain collectively. This duty extends to the obligation to bargain collectively as set forth in subsection (c) of section 7-470."

employment," is the report of the interim commission to study collective bargaining by municipalities which led to the adoption of Public Acts 1965, No. 159, which act included what is now General Statutes § 7-470 (c). We may properly consider such a report in determining the general intent of the legislature. *State ex rel. Pettigrew* v. *Thompson*, 135 Conn. 228, 234, 63 A.2d 154; see also *Bird* v. *Plunkett*, 139 Conn. 491, 504, 95 A.2d 71. With respect to the meaning of the term "collective bargaining" the report stated: "A definition of collective bargaining is also included. The subject matter is to include wages, hours and other conditions of employment. This latter phrase is intended to include the entire spectrum of conditions and benefits which apply to public employment, in addition to the commonly understood basic provisions relating to pay and hours of work, including but not limited to: seniority, grievance procedures, holiday and vacation pay, shift premiums, sick leave, jury duty, pensions and severance pay, insurance coverage of various kinds, seniority in promotions, transfers and layoffs, discipline and discharge and grievance arbitration provisions."

We conclude that, in the absence of some restricting charter provision or overriding circumstance, the city of New Haven did have not only statutory authority to enter into a collective bargaining contract which could provide for binding arbitration of a discharge grievance but also a positive duty to bargain collectively concerning conditions of employment which include questions of discipline and discharge.

A major point in issue in the case is whether the General Statutes, the collective bargaining agreement or the provisions of the city charter control

when, as found by the court, they are in conflict. The plaintiffs argue that the discharge powers of the board of police commissioners are those granted by § 7-276 of the General Statutes which provides that a board of police commissioners "shall have the sole power of appointment, promotion and removal of the officers and members of such police department, under such regulations as it adopts for the purpose, and such appointees shall hold office during good behavior and until removed for cause upon written charges and after hearing." But, as the court found, the powers of the plaintiff board of police commissioners derive not from the statute but from the provisions of the charter of the city of New Haven. The New Haven charter (§ 127) provides: "The board of police commissioners shall have the sole power of appointment and promotion of all officers and employees of the department, under such rules and regulations as they may adopt for the purpose (except where otherwise provided) and in accordance with the Civil Service Rules." Section 128 of the charter provides: "The board of police commissioners shall have power, for cause, after a hearing, on charges made in writing, to remove, reduce in rank, or suspend without pay, any officer or employee in the department that it has the power to appoint. No removal, reduction in rank, or suspension shall be made for political reasons"; section 129 of the charter provides: "Any officer or employee aggrieved by the action of the board of police commissioners may take his application to any judge of a court of competent jurisdiction, in the nature of an appeal from such order." Article 3 of the collective bargaining agreement negotiated by the plaintiff police union and the city of New Haven in accordance with the provisions of the Municipal Employees Relations

Act; General Statutes § 7-474; provides in material part as to "Grievance Procedure" as follows: "B. Definition A grievance for the purpose of this procedure, shall be considered to be an employee or Union complaint concerned with: 1. Discharge, suspension or other disciplinary action." "C. Procedure Step Four If the complainant and his representative, if represented, are not satisfied with the decision rendered, he or his representative may submit the grievance to the Connecticut State Board of Mediation and Arbitration, and the decision rendered by the arbitrator(s) shall be final and binding upon both parties. . . . (e) The arbitrator(s) selected in accordance with the procedure described in item (c) of this step of the procedure shall conduct a hearing at which the facts and arguments relating to the dispute shall be heard. The arbitrator(s) jurisdiction to make an award shall be limited by the submission and confined to the interpretation and/or application of the provisions of this Agreement. The arbitrator(s) shall not have the jurisdiction to make an award which has the effect of amending, altering, enlarging or ignoring the provisions of the Agreement in effect at the time of the occurrence of the grievance being arbitrated, nor shall the arbitrator(s) have jurisdiction to determine that the parties have amended or supplemented the Agreement, unless such amendment and/or supplemental agreement had in fact been made."

The trial court correctly concluded that the powers of the plaintiff board of police commissioners were derived from the provisions of the charter of the city of New Haven. The charter provisions were originally enacted in 1861 by special act; 5 Spec. Laws 439; and as amended in 1899; 13 Spec.

Laws 403; have remained essentially the same
except that in 1903; 14 Spec. Laws 474; the right of
judicial appeal by a discharged officer was added.
The board in New Haven is comprised of six mem-
bers who are appointed by the mayor—not elected
as the later enacted § 7-274 of the General Statutes
would require. Section 7-274 is clearly permissive,
providing that "[a]ny town *may*, by ordinance,
establish a board of police commissioners [emphasis
added]" consisting of three, five or seven electors.
New Haven has not chosen to act under the enabling
provisions of § 7-274 and the powers of the plaintiff
commissioners are those provided in the city char-
ter.

We next turn to consideration of the trial court's
conclusion that there exists a conflict between the
charter provisions and the collective bargaining
agreement with the plaintiff union. We have
already quoted the relevant provisions and it is
obvious that a conflict of sorts could exist between
§ 128 of the charter which provides that the police
commissioners shall have the power to "remove"
any police officer for cause and article 3 of the col-
lective bargaining agreement which provides for
binding arbitration of a grievance filed by an
employee or the union relating to "[d]ischarge, sus-
pension or other disciplinary action."

There is considerable merit to the defendants'
contention that no real conflict exists because there
is nothing in the charter provisions which states
that the removal or discharge of a police officer by
the commissioners cannot be the subject of further
proceedings. They assert that the collective bar-
gaining agreement does not give to any body other
than the police commissioners the power to remove

police officers and that the agreement "merely provides that removal of a police officer is a grievance which may be made the subject of the grievance procedure of the contract, including arbitration, as an ultimate step." This was the conclusion reached in the related case of *Board of Police Commissioners* v. *Maher,* 171 Conn. 613, 370 A.2d 1076, affirmed this same date.

In any event, any conflict or inconsistency which may exist between the charter provisions and the collective bargaining agreement is clearly resolved by that portion of § 7-474 (f) of the General Statutes which provides that "[w]here there is a conflict between any agreement reached by a municipal employer and an employee organization and approved in accordance with the provisions of sections 7-467 to 7-477, inclusive, on matters appropriate to collective bargaining, as defined in said sections, and any charter, special act, ordinance, rules or regulations adopted by the municipal employer . . . the terms of such agreement shall prevail." This was the conclusion reached by the trial court and in so concluding it was not in error.

The grievance procedure established by the collective bargaining agreement, therefore, controls and permits a police officer with a discipline or discharge grievance, as well as the union, to seek, within the terms and limitations of that agreement, arbitration of that grievance by the state board of mediation and arbitration. That the scope of such arbitration proceedings is strictly limited is apparent (as we hold in the concurrent opinion in *Board of Police Commissioners* v. *Maher,* supra) from the further express provision of the bargaining agreement that "[t]he arbitrator(s) jurisdiction

to make an award shall be limited by the submission and confined to the interpretation and/or application of the provisions of this Agreement." Implicit in this conclusion is the further conclusion that an appeal to the Court of Common Pleas pursuant to the provisions of § 52-7 of the General Statutes or § 129 of the New Haven charter is not the sole remedy available to a New Haven police officer who has been subjected to discipline.

In the light of the express, although strictly limiting, provisions of the bargaining agreement concerning the arbitration of disciplinary grievances, we conclude that there was no error in the judgment of the trial court refusing to grant an injunction restraining and prohibiting the defendants from initiating "and/or" proceeding with any arbitration action before the defendant board of mediation and arbitration in connection with the claimed grievances of the defendants White and DiNello arising from their dismissal from the New Haven police department.

There is no error.

In this opinion the other judges concurred.