CITY OF DANBURY *v.* INTERNATIONAL ASSOCIATION
OF FIREFIGHTERS, LOCAL 801, ET AL.
(14218)

SHEA, CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued November 1, 1991—decision released February 25, 1992

*Barbara J. Collins,* for the appellant (named
defendant).

*Saranne P. Murray,* with whom were *Greg T.
D'Auria* and, on the brief, *Linda L. Yoder,* for the
appellee (plaintiff).

GLASS, J. The dispositive issue in this appeal is
whether the plaintiff, the city of Danbury, was required
under General Statutes § 7-473c (a),[1] after a negotia-

---

[1] "[General Statutes] Sec. 7-473c. MANDATORY BINDING ARBITRATION FOL-
LOWING EXPIRATION OF COLLECTIVE BARGAINING AGREEMENT, FOR CON-
TRACT REOPENER PROVISIONS OR FOR REVISIONS TO EXISTING CONTRACT;
PROCEDURE; APPORTIONMENT OF COSTS. (a) If, within ninety days after the

tion impasse, to participate in mandatory and binding arbitration with the named defendant, International Association of Firefighters, Local 801 (union), concerning the establishment of a paramedic unit within the Danbury fire department. The defendant state board of mediation and arbitration determined that the city was required to participate in mandatory and binding arbitration over the controversy and issued an award favorable to the union. This is an appeal by the union from the judgment of the trial court granting the city's application to vacate the award. We affirm the judgment of the trial court.

expiration of the current collective bargaining agreement, or within ninety days after the specified date for implementation of reopener provisions in an existing collective bargaining agreement, or within ninety days after the date the parties to an existing collective bargaining agreement commence negotiations to revise said agreement on any matter affecting wages, hours, and other conditions of employment, neither the municipal employer or the municipal employee organization has requested the arbitration services of the state board of mediation and arbitration, said board shall notify the municipal employer and municipal employee organization that ninety days has passed since such date or the expiration of such collective bargaining agreement and that binding and final arbitration is now imposed on them, provided written notification of such imposition shall be sent by registered mail or certified mail, return receipt requested, to each party. Whenever the parties waive fact finding pursuant to subsection (c) of section 7-473b, the board shall notify each party, in writing, by registered mail or certified mail, return receipt requested, that binding and final arbitration is now imposed on them. Within ten days of receipt of such notification, the chief executive officer of the municipal employer and the executive head of the municipal employee organization each shall select one member of the arbitration panel. Within five days of their appointment, the two members of the arbitration panel shall select a third member. Such third member shall be the chairman of the panel. In the event that the municipal employer or the municipal employee organization have not selected their respective members of the arbitration panel or the two members of the panel have not selected the third member, the state board of mediation and arbitration shall appoint such members as are needed to complete the panel, provided the member or members so appointed are residents of this state and provided further, the third member shall be a fact finder other than the fact finder who submitted the report pursuant to subsection (c) of section 7-473."

The facts material to the disposition of this case are undisputed. Danbury is a Connecticut municipality and an employer within the meaning of the Municipal Employee Relations Act (MERA), General Statutes § 7-467 et seq. The union is an employee organization within the meaning of MERA, and is the exclusive collective bargaining representative of the uniformed and investigatory employees of the Danbury fire department. In 1983 and 1984, the city and the union discussed how they would implement a paramedic unit within the fire department, if such a unit were created by the city. At that time, private companies provided paramedic services in Danbury and billed patients directly. On September 25, 1984, the city and the union entered into a tentative memorandum of agreement concerning the employment of paramedics if and when the city decided to establish a paramedic unit within the fire department.[2] On February 2, 1988, the city and the union signed a collective bargaining agreement covering the period from July 1, 1987, to June 30, 1989. Article 43 of the agreement provided: "Paramedic Squad. Renegotiate the tentative agreement reached between the union and city two years ago. Negotiations to commence within 60 days of the signing of this agreement."[3] Appendix A, Note 3J of the agreement provided: "The City and Local 801, I.A.F.F., agree to negotiate the position of Paramedic when either party requests."

The city and the union continued to negotiate regarding the establishment of a paramedic unit, but in May,

---

[2] The first paragraph of the September 25, 1984 memorandum provided: "The City of Danbury and Local 801, I.A.F.F. agree to the following provisions which shall not become effective until the City funds and implements a paramedic program as part of the ambulance response service of the Danbury Fire Department."

[3] The "tentative agreement" referred to in Article 43 of the collective bargaining agreement is the tentative memorandum of agreement of September 25, 1984.

1988, the union decided that the negotiations had reached an impasse and requested mediation. The city participated in mediation under protest, claiming that the compulsory dispute resolution provisions of § 7-473c (a) did not apply to the controversy because the creation of a paramedic unit within the fire department was a political and managerial decision, and, therefore, not a mandatory subject of collective bargaining under MERA. When the parties failed to reach an agreement following mediation, the union asked the board to impose binding arbitration. In a letter dated December 21, 1988, the board notified the parties that, because the controversy had not been resolved by mediation, as permitted under § 7-473c (a), "binding and final arbitration [was] now imposed on them." The board directed the city and the union to submit a list of names for membership on the arbitration panel. The city submitted its selection for the panel in a letter to the board dated January 9, 1989, noting that its appointment of an arbitrator was without prejudice to any jurisdictional claims it might have concerning the imposition of arbitration.

The three member arbitration panel filed its award with the board on October 11, 1989, requiring that the city "test for and hire four (4) Firefighter/Paramedics to implement the program on July 1, 1989." One of the arbitrators dissented from the award, arguing that "a permissive subject cannot be converted into a mandatory one by operation of a contract reopener." The city filed an application in the Superior Court to vacate the award. The court granted the city's application, concluding that under § 7-473c the establishment of a paramedic unit within the Danbury fire department was not a subject of mandatory and binding arbitration. The court concluded that the mandatory arbitration requirements of § 7-473c extend only to "matter[s] affecting wages, hours, and other conditions of employment," and

that the establishment of a paramedic unit did not fall within any of these categories. The court also concluded that the record supported the arbitrators' finding that the city had agreed to negotiate concerning the establishment of a paramedic unit by discussing it during collective bargaining sessions with the union. The court concluded further, however, that the city's conduct in negotiating the subject of a paramedic unit with the union had not "somehow converted a non-mandatory matter to one which is the subject of mandatory arbitration."

The union appealed the trial court's decision to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023.[4] On appeal, the union claims that: (1) under § 7-473c (a), mandatory and binding arbitration may be imposed on negotiation of a permissive subject of bargaining held pursuant to a collectively negotiated reopener provision; (2) Article 43 and/or Appendix A, Note 3J of the 1987 collective bargaining agreement between the city and the union constituted a reopener provision under § 7-473c (a); and (3) the trial court improperly granted the city's application to vacate the arbitration award.

Although the union raises three claims on appeal, the dispositive issue is whether the city was required under § 7-473c (a), after a negotiation impasse, to participate in mandatory and binding arbitration with the union concerning the establishment of a paramedic unit within the Danbury fire department.[5] The union argues that Article 43 and/or Appendix A, Note 3J of the 1987

---

[4] The board also appealed the trial court's decision; however, we dismissed its appeal due to a lack of standing.

[5] The union does not dispute the trial court's finding that the city, by participating in the arbitration, did not waive its claim, which it had expressly reserved in its January 9, 1989 letter to the board, that the mandatory arbitration provisions of § 7-473c (a) do not apply to the establishment of a paramedic unit.

collective bargaining agreement constituted a "reopener provision" within the meaning of § 7-473c and, therefore, the issue of the proposed paramedic unit was subject to mandatory arbitration under the statute. The city contends that the agreement to negotiate further regarding the creation of a paramedic unit, embodied in Article 43 and Appendix A, Note 3J, did not constitute a reopener provision and that, in any case, mandatory arbitration under § 7-473c is restricted to matters affecting wages, hours and other conditions of employment. We conclude that the trial court properly vacated the arbitration award because the establishment of a paramedic unit is not a matter affecting wages, hours and other conditions of employment, and, therefore, is not a mandatory subject of bargaining under § 7-473c.

The union argues that the provisions of the collective bargaining agreement that relate to the establishment of a paramedic unit are "reopener provisions" within the meaning of § 7-473c (a).[6] For the purposes of this appeal, the union assumes, without conceding, that the establishment of a paramedic unit is a permissive subject of bargaining. The union contends,

___

[6] The union refers to the following language, added to General Statutes § 7-473c (a) by No. 82-37 of the 1982 Public Acts: "or within ninety days after the specified date for implementation of reopener provisions in an existing collective bargaining agreement . . . ." The trial court, in its memorandum of decision, did not specify whether it was treating the provisions of the collective bargaining agreement concerning the establishment of a paramedic unit as "reopener provisions" under § 7-473c. We note, however, that the union, contrary to the position it has taken on appeal, characterized these provisions as "midterm" in a complaint it filed with the state board of labor relations on April 20, 1987. Although the word "midterm" does not appear in § 7-473c (a), the parties agree that the relevant language, which was added by No. 87-11 of the 1987 Public Acts, is as follows: "or within ninety days after the date the parties to an existing collective bargaining agreement commence negotiations to revise said agreement on any matter affecting wages, hours, and other conditions of employment . . . ." The union concedes that, under § 7-473c (a), "midterm" negotiations on a permissive subject of bargaining are not subject to mandatory arbitration.

nevertheless, that arbitration may be imposed because the language in § 7-473c (a) restricting arbitration to "any matter affecting wages, hours, and other conditions of employment" does not apply to reopener provisions. Because we conclude that mandatory arbitration under § 7-473c (a) is restricted to matters affecting wages, hours and other conditions of employment, we need not decide whether the disputed provisions of the collective bargaining agreement constitute reopener provisions.

In construing any statute, we consider "its legislative history, language, purpose and the circumstances surrounding its enactment." (Internal quotation marks omitted.) *Winchester* v. *State Board of Labor Relations,* 175 Conn. 349, 356, 402 A.2d 332 (1978). These considerations lead us to conclude that, regardless of how we characterize the relevant provisions of the collective bargaining agreement, arbitration may be imposed under § 7-473c (a) only on matters affecting wages, hours and other conditions of employment. Starting, as we must, with the language of the statute itself; *United Illuminating Co.* v. *Groppo,* 220 Conn. 749, 756, 649 A.2d 1005 (1992); we note that § 7-473c (a) does not define the term "reopener provision." "Where particular words or sections of a statute, considered separately, are imprecise, we may look to the expressed intent of the statute as a whole." Id. We therefore consider the expressed intent of MERA as a whole to discern whether mandatory arbitration under § 7-473c (a) is limited to matters affecting wages, hours and other conditions of employment.

The phrase "wages, hours and other conditions of employment," appears in several sections of the original statutory enactment. Public Acts 1965, No. 159. First, the statute defines an "employee organization" as "any lawful association, labor organization, federation or council *having as a primary purpose the*

*improvement of wages, hours and other conditions of employment* among employees of municipal employers." (Emphasis added.) General Statutes § 7-467 (6). Significantly, the right of employees "to bargain collectively" is expressly limited under § 7-468 (a) to "questions of wages, hours and other conditions of employment." In addition, § 7-474 (d) authorizes "a district, school board, housing authority or other authority established by law . . . which . . . has sole and exclusive control over the appointment of and *the wages, hours and conditions of employment* of its employees"; (emphasis added); to represent the municipal employer in collective bargaining. Finally, § 7-470 (c) defines the duty "to bargain collectively," in relevant part, as the mutual obligation of the municipal employer and the representative of the employees to "confer in good faith *with respect to wages, hours and other conditions of employment . . . .*" (Emphasis added.)

We have stated that "[a] legislative act must be read as a whole and construed to give effect and to harmonize all of its parts . . . ." (Internal quotation marks omitted.) *United Illuminating Co.* v. *Groppo,* supra, 759. In thus construing the provisions of MERA, we conclude that the duty of the parties to negotiate is limited to the "mandatory" bargaining subjects of "wages, hours, and other conditions of employment." Cf. *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 577, 295 A.2d 526 (1972) (duty to negotiate under Teacher Negotiation Act limited to "salaries and other conditions of employment"); see also *Lieberman* v. *State Board of Labor Relations,* 216 Conn. 253, 264, 579 A.2d 505 (1990). This conclusion is in accord with federal labor law precedent; see *First National Maintenance Corporation* v. *NLRB,* 452 U.S. 666, 674, 101 S. Ct. 2573, 69 L. Ed. 2d 318 (1981);

*NLRB* v. *Wooster Division of Borg Warner Corporation,* 356 U.S. 342, 349, 78 S. Ct. 718, 2 L. Ed. 2d 823 (1958); on which we have consistently relied to interpret parallel state legislation, including MERA. *Stratford* v. *Local 134, IFPTE,* 201 Conn. 577, 589, 519 A.2d 1 (1986). We are persuaded that the limitation of the duty to bargain collectively to "wages, hours, and other conditions of employment," expressed in other provisions of the statute, supports an interpretation of § 7-473c (a) that restricts mandatory and binding arbitration to these subjects.[7] Cf. *First National Maintenance Corporation* v. *NLRB,* supra, 675 n.13 (parties are free to negotiate in good faith a nonmandatory subject of bargaining but may not insist on it to the point of impasse); *Allied Chemical & Alkali Workers of America* v. *Pittsburgh Plate Glass Co.,* 404 U.S. 157, 185–86, 92 S. Ct. 383, 30 L. Ed. 2d 341 (1971) (midterm unilateral modification of collective bargaining agreement prohibited under federal labor relations act only as to mandatory subjects of "wages, hours and other terms and conditions of employment").

The trial court found that the proposed paramedic unit was not a matter affecting wages, hours or other conditions of employment. We agree. We limit our analysis to the phrase "other conditions of employment,"

[7] The union makes much of the fact that the legislature, in amending General Statutes § 7-473c (a) to apply to reopener provisions, did not expressly restrict arbitration to "wages, hours, and other conditions of employment," as it did in 1987 when the statute was amended to apply to midterm negotiations. In this regard, we find significant the following discussion during House debate on the 1987 amendment (30 H.R. Proc., Pt. 3, 1987 Sess., p. 1048):

"[Representative Richard O.] Belden: Mr. Speaker, a question if I might, to the proponent. The new language on line 12 and 13, and other conditions of employment. Does that change in any way the current positions of the parties concerning what they can and can't negotiation [sic].

"[Representative Joseph A.] Adamo: (116th) Through you, Mr. Speaker.

"Speaker [Irving J.] Stolberg: Please proceed.

"Representative Adamo: (116th) No, it does not, sir."

as used in § 7-473c (a).[8] "The significance of calling something a 'condition of employment' is that it then becomes a mandatory subject of collective bargaining . . . . The duty to negotiate is limited to mandatory subjects of bargaining. As to other matters, however, each party is free to bargain or not to bargain. . . . To the extent that such permissive bargaining results in an accord between the parties, their agreement may be incorporated into a binding contract . . . ." (Citations omitted.) *West Hartford Education Assn., Inc.* v. *DeCourcy,* supra, 576–77. The phrase conditions of employment limits the area of negotiability and excludes the sort of managerial decisions that "lie at the core of entrepreneurial control."[9] (Internal quotation marks omitted.) Id., 582–83. In *West Hartford Education Assn., Inc.* v. *DeCourcy,* supra, 585–87, we concluded that, while class size and teacher load were conditions of employment because they defined the amount of work expected of a teacher, whether to conduct extracurricular activities and what those activities would be were decisions uniquely within the province of the defendant board of education, and, thus, not conditions of employment. See also *First National Maintenance Corporation* v. *NLRB,* supra, 686 (employer's decision to shut down part of its business purely for economic reasons was not a "condition of employment" and thus not a mandatory subject of bar-

[8] Neither the city nor the union has argued that the establishment of a paramedic unit within the Danbury fire department falls under the terms "wages" or "hours."

[9] See *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 582, 295 A.2d 526 (1972), for a list of subjects that the federal courts have deemed to constitute "other conditions of employment." See also *Board of Police Commissioners* v. *White,* 171 Conn. 553, 560, 370 A.2d 1070 (1976) (the term "other conditions of employment" includes but is not limited to seniority, grievance procedures, holiday and vacation pay, shift premiums, sick leave, jury duty, pensions and severance pay, insurance coverage of various kinds, seniority in promotions, transfers and layoffs, discipline and discharge and grievance arbitration provisions).

gaining under federal labor relations act); *New Haven* v. *New Haven Police Union Local 530,* 210 Conn. 597, 607–608, 557 A.2d 506 (1989) (decision of how much to appropriate for elderly housing security was "political and managerial," thereby limiting city's duty to negotiate); but see *Fibreboard Corporation* v. *NLRB,* 379 U.S. 203, 215, 85 S. Ct. 398, 13 L. Ed. 2d 233 (1964) (replacement of employees in existing bargaining unit with those of an independent contractor to do the same work under similar conditions of employment is a mandatory subject of bargaining under federal labor relations act). In the present case, the city alone was empowered to decide whether to establish a paramedic unit within the Danbury fire department. The establishment of a paramedic unit was thus exactly the sort of managerial decision that "lie[s] at the core of entrepreneurial control," which is not covered by the term "conditions of employment," and, therefore, is not subject to mandatory and binding arbitration under § 7-473c (a).

Because the establishment of a paramedic unit within the fire department was not a mandatory subject of arbitration, the parties could be compelled to arbitrate the issue only if they had agreed to do so. The union claims that the trial court improperly granted the city's application to vacate the arbitration award because, once the court found that the city had agreed to negotiate regarding the establishment of a paramedic unit, the court was required to uphold the arbitrators' decision. We disagree.

The union concedes that the proper standard of judicial review in a case involving statutorily mandated arbitration, such as the present one, is a de novo review of the interpretation and application of the law by the arbitrators. *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 191, 530 A.2d 171 (1987). The trial court

did not disturb the arbitrators' factual finding that the city had agreed to negotiate concerning the establishment of a paramedic unit within the fire department. Having properly conducted a de novo review of the arbitrators' interpretation and application of the law, however, the court concluded that the city's agreement to negotiate did not constitute an agreement to submit to binding arbitration. We agree with the trial court that, while there was factual support for the arbitrators' finding that the city had agreed to negotiate regarding the establishment of a paramedic unit, "[a]greeing to negotiate is not agreeing to mandatory binding arbitration." Cf. *Allied Chemical & Alkali Workers of America* v. *Pittsburgh Plate Glass Co.*, supra, 187 ("[b]y once bargaining and agreeing on a permissive subject, the parties . . . do not make the subject a mandatory topic of future bargaining"). We are persuaded that the parties in the present case never agreed that upon reaching an impasse concerning the establishment of the proposed paramedic unit, the issue would be subject to mandatory and binding arbitration. We conclude that because § 7-473c (a) makes arbitration mandatory and binding only on matters affecting wages, hours and other conditions of employment, and the establishment of a paramedic unit within the Danbury fire department is not a "condition of employment" within the meaning of the statute, the trial court properly granted the city's application to vacate the arbitration award.

The judgment is affirmed.

In this opinion the other justices concurred.