[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: COMMUNITY COLLEGE CONTRACT
Before the court are two consolidated cases. For the purposes CT Page 902 of clarity of decision the court has rendered a separate decisional memorandum in the first of these matters, State of Connecticut v. Connecticut State Board of Labor Relations, D.N. 379709S. Therefore, only the second case, involving an appeal from certain decisions of the State Board of Labor Relations concerning a contract with Community College personnel will be addressed in this memorandum.
This second case involves negotiations between the Federation of Technical College Teachers, Local 1492, AFL-CIO (the "Union") and the Connecticut Board of Trustees for Community/Technical Colleges (the "Trustees"). The Board represents the higher educational sphere in Connecticut and is an employer of members of the collective bargaining unit exclusively represented by the defendant union under 5-270 of the General Statutes, the State Employees' Relations Act, ("SERA"). The federation and trustees are parties to a collective bargaining agreement that expired June 30, 1990. On or about January 18, 1990, the board and the Union began negotiations towards a successor agreement. However, the parties were unable to reach an agreement, and the matter went to arbitration. On or about November 5, 1990, the Board filed a petition for a declaratory ruling with the Connecticut State Board of Labor Relations ("Labor Board") for a determination on whether certain specified Union proposals for a successor collective bargaining agreement were within the scope of mandatory bargaining under SERA, specifically C.G.S. 5-272 (a). On or about April 30, 1991, the Trustees appealed the Board of Labor Relations rulings pursuant to the Uniform Administrative Procedure Act, 4-183 of the Connecticut General Statutes.
The Labor Board ruled on seven proposals which are in controversy here. The Board determined the first six were subject to mandatory collective bargaining. The Labor Board ruled that the seventh, "bumping" proposal was only partially subject to mandatory collective bargaining because "bumping" could not be used to restrict the institution's ability to reorganize.
The first union proposal involved the scheduling days during the school year. Article 8, section 8.1.1 provided that there would be 75 instruction, 4 exam, and 2 professional days for a total of 81 days of the semester.
The second issue, Article 8, section 8.3.5, of the proposed collective bargaining agreement involved the scheduling of student consultation hours. The relevant part of the proposal stated that CT Page 903 faculty members were required to schedule at least three regular hours per week for consultation with students.
The third proposal, Article 8, section 8.3.12, involved assigning the maximum number of students that could be present in any specific lecture section. The proposal called for equalization of the number of students per class by the standard of student need and number of students in comparable sections to be completed within two weeks of the first day of classes.
The fourth proposal required that the Board give at least 12 months notice prior to layoffs for economic or programmatic reasons.
The fifth proposal specified the number of hours of consultation that a part-time teacher would be required to schedule given the number of credit hours that faculty member teaches.
The sixth proposal delegated the responsibility for Evening Division Departmental Activities and also specified the professional working conditions of the employees.
Finally, the Labor Board ruled that the seventh disputed section of the Union's collective bargaining agreement concerning bumping within a department to be a mandatory subject of bargaining, except that it might not restrict the institution's ability to reorganize. The plaintiff appellant claims that the Board's seven findings were essentially judgments about what the law requires or forbids in bargaining with state employees, and that these judgments were legally incorrect.
The issues to be decided in this case derive from the same basic question, are the union proposals of the collective bargaining agreement mandatory, permissive, or illegal subjects of bargaining. If the proposals are determined to be mandatory subjects of bargaining, then the parties are required to bargain in good faith. NLRB v. Wooster Division, Borg Warner Corp., 356 U.S. 342,75 S.Ct. 718, 2 L.Ed.2d 823. If the matter is found to be a permissive subject of bargaining, then it is at the election of the parties as to whether the proposal will be bargained over and is not required to be submitted to an arbitrator. General Statutes 5-278
(g)(1). When proposals are subject to mandatory bargaining, they will proceed, when in impasse, to arbitration as required by General Statutes 5-278(g)(1). In order for a proposal to be considered a mandatory subject of bargaining, it must be within the scope of employee "wages, hours, or conditions of employment". CT Page 904 General Statutes 5-272 (c).
Among those things which have been determined to be within the scope of conditions of employment are safety rules, employee work loads, union dues, bonuses, effect of change of workplace location, contracting out work, West Hartford Education Ass'n. , Inc. v. DeCourcy, 162 Conn. 566, 582; layoffs, seniority, grievance procedures, holiday and vacation pay, shift premiums, sick leave, jury duty, pensions, severance pay, insurance coverage, seniority in promotions, transfers, discipline, discharge and grievances, Board of Police Commissioners v. White, 171 Conn. 553.
In contrast, proposals that fall within the scope of management prerogative do not warrant mandatory negotiations but, instead, enter the category of permissive bargaining at the option of the parties. General Statutes 5-278 (g)(1). The third and final category of bargaining is the prohibited or illegal area of bargaining, where labor statutes would be violated by bargaining about doing things that are prohibited by law. See Gen. Stat. 5-272
(a)(5), or where the proposal would conflict with clear provisions of other non labor statutes. Lieberman v. Board of Labor Relations, 216 Conn. 253.
No union can expect to stop the necessary operations of the government of its state or bargain to violate its constitution or laws or public policies which are the necessary policy consequence of those laws, or case law interpreting those laws. DeCourcy, supra; Lieberman, 216 Conn. 253 (1990).
The determination whether a union proposal is a mandatory subject of bargaining which affects wages, hours or conditions of employment cannot rise or fall on whether or not it has some effect on something which would otherwise be solely management prerogative. Judged by this standard, no proposal would be mandatory and most would be illegal or at least entirely permissive. That is so because it is impossible to conceive of any such proposal which would not have at least some impact on management's prerogatives.
The policy decision that the State as sovereign would permit collective bargaining to affect its management prerogatives was made by the General Assembly when it adopted SERA in 1975, and it ought to be respected by courts of law.
The test employed in interpreting the federally enacted CT Page 905 National Labor Relations Act in determining what is encompassed in the term "wages, hours and other conditions of employment" finds them to cease to be mandatory bargaining subjects at the point where union proposals cross the border and infringe on the "core of entrepreneurial control." cf. Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233. Governmental bodies are not entrepreneurial. Private business and industry's focus and management depends on decisions from a person who organizes, operates, and assumes the risk for business ventures aimed at earning a profit. In contrast, decisions of governmental units are circumscribed by a constitution and a body of laws which dictate the purpose, manner, organization, and form of operation of that branch of our government. Such units exist to fulfill some already outlined constitutional and statutory purpose, not some profit making choice of purpose dictated by a private entrepreneur.
In light of such differences, the Fibreboard test is not always easily translated to establish the line in public employee bargaining between mandatorily bargainable issues and those which are merely permissive or actually prohibited. Since governmental units must look to the grant of authority from a constitution or statute as interpreted by the courts for their purpose and structure, then the right of public employees to bargain about "wages, hours and other conditions of employment" ought to be circumscribed only when provisions of some such source of authority would be violated or some public policy which would be the necessary consequence of the adoption of such laws would be otherwise frustrated, or some prohibited practice proscribed by the collective bargaining law would occur.
There is a category of negotiable issues in which there is only a slight tangential relation to "wages, hours, or conditions of employment", but a substantial definite relationship to the necessary political or managerial decision making power derived from constitutional or statutory sources which public officials need to be able to exercise unfettered to carry out the constitutional or statutory duties required by their office. These kind of issues bring into play the "balancing test" employed by the State Labor Board. In these kind of situations, the Labor Board "balances" collective bargaining requirements with the attainment of goals sought by other requirements of a constitutional or statutory provision, and stamps the subject non mandatory.
Generally, when an agency's statutory function and/or changing circumstances require it to determine whether to exercise some CT Page 906 governmental function, it is a matter of non negotiable managerial discretion even though how it is exercised or implemented through employees or in a way that affects employees may require mandatory bargaining. Examples of such managerial discretion include: whether to conduct extra curricular school activities, and what, if any, they would be, DeCourcy, supra, 585-587; whether to establish a paramedic unit in a city fire department, Danbury v. International Association of Firefighters, I.A.F.F., Local 801, et al, 221 Conn. 244; how much to appropriate for housing security, New Haven v. New Haven Police Local 530, 230 Conn. 597; whether to shut down a facility no longer needed, First National Maintenance Corporation v. NLRB, 452 U.S. 666, 686. However, when the agency decides to hire a coach for an extracurricular school sport, or staff a paramedic unit in the fire department, or hire housing security guards, or shut down a facility which becomes unnecessary, rates of pay, promotional security, seniority in layoffs or any other aspect of the employment necessary to implement that discretionary decision may require mandatory collective bargaining. An employer must bargain concerning proposals about how to implement its exercise of management prerogative only if the effect of the procedural proposal would not extinguish the employer's right to exercise that prerogative.
 I.
This court will first take up the matters in dispute which involving the "school day" and "school calendar" which present a common thread running through both consolidated cases. These terms have a commonly understood meaning in teacher contracts which are set out in the case law.
The length of the school day is defined as the number of hours during which a teacher is required to be in attendance at a school each day. School calendar means the number of days and distribution of days during which schools are in session or teachers may be assigned to duties. DeCourcy, supra, 580.
The proposal at issue concerning the school calendar reads as follows:
ARTICLE 8 (PROFESSIONAL WORKING CONDITIONS)
Section 8.1.1:
. . . The work year shall consist of two semesters (Fall CT Page 907 and Spring) each having 75 instructional, 4 final exam days and 2 professional days for a total of 81 days per semester. . .
In its final "A" decision the Labor Board held that:
 Article 8, Section 8.1.1 is a mandatory subject of bargaining, except that the question of whether there will be four final exam days is a question of academic policy and a non mandatory subject of bargaining.
The import of this particular declaratory ruling is clear to the Court. The Labor Board has held that the proposed 81 day length of each semester is a mandatory subject of bargaining, but that how many of the total days bargained for which will be devoted to exams is a matter of academic policy which the employer is free to bargain about if it chooses to do so, but is not a subject of mandatory collective bargaining. The court finds that this ruling of the Labor Board is not legally erroneous and is made in compliance with our law. Contract collective bargaining between the trustees and the union is governed by provisions of the State Employee Relations Act (SERA), 5-271, which grants to employees the right to "bargain collectively through representatives of their own choosing on questions of "wages, hours and other conditions of employment." The language of this collective bargaining law is similar to and guided by similarly worded collective bargaining laws such as the National Labor Relations Act, Connecticut Labor Relations Act, and Municipal Employees Relations Act. DeCourcy, supra, 578-579.
The U.S. Supreme Court in interpreting the similarly worded National Labor Relations Act held that:
 The particular hours of the day and the particular days of the week during which employees may be required to work are subjects well within the realm of wages, hours, and other terms and conditions of employment. Meat Cutters v. Jewel Tea Co., 381 U.S. 676, 691, 59 LRRM 2376 (1965).
The Connecticut Supreme Court in DeCourcy held that in the Teachers Negotiations Act, a distinct statute, governing only teachers employed by towns and cities, where the legislature had omitted the word "hours" from the mandatory subjects of collective bargaining set out in the statute, school day length and school CT Page 908 calendar were thereby omitted. The Court agrees with the defendants that the policy decision as to whether these matters are proper subjects of collective bargaining has already been made when the word "hours" was included in the SERA Act, and that the import of the inclusion of "hours" and "conditions of employment" in 5-271
of the General Statutes is that the legislature made them mandatory bargaining subjects. DeCourcy, supra, 580.
The Court further adopts the reasoning in its separate memorandum on this issue in the consolidated case of State v. State Board of Labor Relations, D.N. 379709S.
 II.
The Trustees have also appealed the declaratory ruling that the work year, work week, and work day for the evening division is a mandatory subject of bargaining. Little purpose would be served by repeating an analysis which has already been made in this decision and in the consolidated case concerning the duty to mandatorily bargain over the work year, work week, and work day.
For the reasons cited in both of the court's memoranda in the consolidated cases, this court holds that the Labor Board's decision was legally correct.
 III.
The following language was proposed to be incorporated in the new agreement:
 "Faculty members shall schedule at least three (3) regular hours per week for consultation with students at appropriate times. Each faculty member shall submit his/her office hour schedule to the Department Chairperson who will inform the Dean of Instruction of the entire departmental schedule no later than one week after the term begins."
The Labor Board's "A" decision concludes that these hours of consultation constitute an additional form of contact hours similar to but less intensive than student contact hours and are therefore within the penumbra of mandatory subjects of collective bargaining. The Labor Board maintains that this proposal affects workload and therefore is a mandatory subject of collective bargaining, citing DeCourcy, supra at 582; Gallen Kamp Stores Co. v. NLRB, 402 F.2d 525
CT Page 909 (9th Cir.) and is applicable to public education cases.
The Union agrees that workload is at issue and that the first sentence of the proposal is a mandatory subject of bargaining.
The Trustees, on the other hand, contend that the first sentence of this proposal is a non mandatory subject of bargaining because designation of three hours per week for student consultation is a managerial prerogative and that within the permissible 35 weekly work hours, management only seeks to assign work within the employee's job description.
The court is not clear from the record or the Labor Board's ruling whether or not these employees are required to work a 35 hour, 7 hour per day, maximum work week at the school location.
Section 8-2 of the contract deals with the work day. It appears to permit scheduling of work between 8:00 A.M. and 4:30 P.M. daily on a 5 day per week basis, and longer for certain new hires. It is not clear whether this contractual schedule simply sets out the time within which classes may be scheduled or alternatively sets out total work hours during which the employee is required to be on the premises at work. The Labor Board makes no factual findings about this but hints that the State as employer may be mistaken in its view of what constitutes the work week. What the parties intended by their agreement can sometimes be ascertained from how they implemented it and there is no solid evidence in the record about that. This factual "premise" is key to the decision this court must make as to whether the proposal only affects an employer's exercise of a right to assign tasks during "clock hours" or whether additional workload results. The matter is remanded to the State Labor Board for a factual finding concerning that issue. Upon the making of such factual finding, the Labor Board should make such a declaratory ruling as to mandatory negotiability as is warranted by that finding and the applicable law.
 IV.
The parties are also at odds over the Labor Board's decision to rule the following proposal is a mandatory subject of negotiation:
ARTICLE 8 PROFESSIONAL WORKING CONDITIONS CT Page 910
Section 8.3.12
 In making a determination regarding the maximum number of students assigned to a lecture session, the Dean shall consider, in light of the nature and goals of the course, the extent of individualized instructional in-class student needs.
 In making a determination regarding the maximum number of students assigned to a laboratory section, the Dean shall consider the number of fully equipped work stations in that particular laboratory and the maximum number of work stations commensurate with safe operation of the equipment, good learning conditions, and the safety of the student.
 There shall be reasonable equalization of the number of students in sections of the same course, consistent with student needs. Such equalization shall be accomplished by the administration one time during the three week period beginning one week prior to the first day of classes and ending two weeks after the first day of classes.
The Labor Board's decision categorizes the proposal as one relating to avoidance of work load disparity.
The Trustees declare that as far as they are concerned the matter is one of "academic policy" and hence not within the scope of mandatory bargaining.
The phrasing of both this proposal and the board's ruling may have something to do with the conundrum created by the house debate on a 1986 amendment[1] to SERA creating binding arbitration as a means of settling impasses on mandatory subjects of collective bargaining. Although in DeCourcy, the judicial construction of "conditions of employment" when linked with "hours" in a statute clearly included class size among the list of encompassed working conditions, a proponent of the binding arbitration amendment indicated it would not be in answer to a question posed on the house floor. The court's view of this matter is that nothing in the 1986 amendment changed the "wage, hours and other conditions of employment" language which Justice Ryan construed. The 1986 amendment did not exclude "class size" by any language incorporated in it. In such a situation the court must be guided by that CT Page 911 venerable maxim that when the language of a statute is clear, courts must be guided by it and not some contrary intent in the mind of some member of the General Assembly. Furthermore, "conditions of employment" clearly include safety, workload and distribution of the workload among the work force. DeCourcy, supra, 586.
The court finds the plaintiff's citations of decisions from other states holding class size is not mandatorily negotiable inapposite in light of differences between their holdings and our own case law and between the foreign laws these cases interpreted and the Connecticut collective bargaining laws. The court adopts the reasoning set out in the separate Memorandum in the consolidated case State v. Connecticut State Labor Board, et al. Some of these other states do not include "hours" or "conditions of employment" within the list of mandatory bargaining subjects. Others provide for broad management prerogative but let teachers strike as a means to secure a contract. In others, binding arbitration is not mandatory after bargaining impasses. These distinctions leave those cases of little value and this court declines to treat them as authoritative.
 V.
The union made a proposal on layoffs as follows: "Notice of Layoffs. The Board shall give at least twelve (12) months notice of layoff for economic or programmatic reasons. Such notice does not apply to a bumping under Paragraph 22.2.4 below." The Labor Board ruled that "[i]t is well settled labor law both in this jurisdiction and elsewhere, that the decision to effectuate layoffs for legitimate reasons is a managerial prerogative. Town of Stratford, No. 999 (1971); Town of Newington Board of Education, No. 1116 (1973); West Haven Board of Education, No. 1363 (1976); DeCourcy, supra, at 583." It is equally well established that procedures for layoffs and recalls are clearly mandatory subjects of bargaining. C.J. Morris, The Developing Labor Law, 2 Ed. Vol. 1. The union maintains that the proposal regarding advanced notice of layoffs is clearly a procedural matter distinct from the discretionary management decision whether to make layoffs. While the union admits that the prior notice provision impacts the decision to lay off, it maintains that such impingement is in fact no different than any other layoff procedures to which the employer would have to adhere when making such a layoff decision. This court agrees. The Supreme Court held in Board of Police Commissioners v. White, 171 Conn. 553, 559, that "the broad statutory term CT Page 912 `conditions of employment'" may be construed to include the question whether persons shall continue in employment; cf. Fibreboard Paper Products Corporation v. NLRB, 379 U.S. 203,85 S.Ct. 398, 13 L.Ed.2d 233. In dealing with a discharge case and whether there was authority under a collective labor contract to provide for an arbitration proceeding concerning the discharge for cause of certain police employees, in interpreting the analogous Municipal Employees Relations Act (MERA), the Connecticut Supreme Court in the case of Board of Police Commissioners of the City of New Haven v. White, supra, stated that "of particular significance, indicative of the statutory intention in the use of the term `conditions of employment' is the report of the Interim Commission to Study Collective Bargaining by Municipalities which led to the adoption of Public Acts 1965, No. 159, which act included what is now the General Statutes 7-470(c). We may properly consider such a report in determining the general intent of the legislature. State ex rel. Pettigrew v. Thompson, 135 Conn. 228, 234,63 A.2d 154; see also Bird v. Plunkett, 139 Conn. 491, 504, 95 A.2d 71. With respect to the meaning of the term "collective bargaining" the report stated:
 A definition of collective bargaining is also included. The subject matter is to include wages, hours and other conditions of employment. This latter phrase is intended to include the entire spectrum of conditions and benefits which apply to public employment, in addition to the commonly understood basic provisions relating to pay and hours of work, including but not limited to: seniority, grievance procedures, holiday and vacation pay, shift premiums sick leave, jury duty, pensions and severance pay, insurance coverage of various kinds, seniority in promotions, transfers and LAYOFFS. . ." (Emphasis provided.)
It is clear from this construction that the procedure for implementing layoffs, once the decision to reduce the work force has been made by an employer, is a subject of mandatory bargaining.
The union proposal, while it may delay the layoff, does not extinguish the right management has as its sole prerogative to determine whether a reduction in force will occur.
The Trustees' concerns about a twelve month prior notice period is best addressed in contract negotiations, or in CT Page 913 arbitration after any bargaining impasse, or by asking the legislature to change the law. The court is satisfied, however, that the legislative history and prior judicial construction of the terms "conditions of employment" provide solid ground for the Labor Board's declaratory ruling. The court notes that the General Assembly has wisely returned to biennial budgets which lessens the possible interference with the exercise of this layoff right which concerns the Trustees.
 VI.
The Labor Board next ruled that a portion of the proposal for Section 23.5 of the contract, limiting management's ability to assign bargaining unit work to non bargaining unit part-time employees, does address the issue of contracting out bargaining unit work and is a mandatory subject of bargaining. Specifically, the Labor Board ruled that the proposal providing that "the use of part-time employees, including bargaining unit part-time employees and non-bargaining unit part-time employees will be a continuing subject of discussion at the Labor-Management Committee minutes" is a mandatory subject of bargaining.
The Supreme Court noted in DeCourcy, supra, 582, that the NLRB and the Courts have included within the term "other conditions of employment" "contracting out of work." Fibreboard Paper Products Corporation v. NLRB, 379 U.S. 203. Simple logic dictates that this be the case otherwise the employer at its discretion could so atomize the work force by replacing full-time with part-time employees that there would be nothing left of the bargaining unit.
 VII.
The last proposal on which the Labor Board issued a declaratory ruling concerns a proposed side letter, Appendix E, concerning Job Classification For Purposes of Bumping Rights within Departments.
This court is of the opinion that whether the State of Connecticut, acting through the Board of Trustees, will operate a particular educational facility, what educational programs it will offer, and the basic qualifications of those who teach in each program, are all matters within the prerogative of management, and not mandatory subjects of collective bargaining.
The Trustees maintain that because Appendix E sets forth CT Page 914 program equivalencies, it directly implicates matters of academic policy and management prerogative.
The Labor Board ruled that:
 "Appendix E deals with procedures for bumping in the event of a reduction in force. Since it lists departments into which persons may bump, Petitioner argues that it restricts Petitioner in its ability to establish, eliminate, or modify departments. Such decisions are matters of academic policy. However, Petitioner is obligated to negotiate with the Union concerning procedures for effectuating a reduction in force if Petitioner determines that such reduction is necessary. Appendix E is a mandatory subject of bargaining.
The union admits that it is the Trustee's prerogative to make a reduction in the work force, but contends that the procedure for implementing any necessary layoffs to bring it about is a subject of mandatory bargaining. The union contends that the proposal language "It is understood and agreed that the term `Same Department' used in layoff, Article 22, Item 4 (Bumping: a — Same Department) — shall be construed in accordance with" Appendix E, makes it clear that it involves procedure after layoff not academic policy.
The existing contract provides for a system of bumping under which an instructor laid off at one location could "bump" a less senior person in the same department in another location. The side letter known as Appendix E when read together with the contract also provides for bumping into a different department within the same school location.[2] For example, in Hartford, Math 3, Physics, Natural Science, and Chemistry I are all determined to be within the "same department" in the area of General Studies. See Appendix E.
Appendix E may well be a subject of some permissive bargaining. However, the court's opinion is that the Labor Board erred in its declaratory ruling that it is a subject of mandatory bargaining because the ultimate effect of such a ruling is that an Arbitrator rather than the Board of Trustees by accepting the union language would be able to determine the academic qualifications of a "bumping" instructor to teach another particular academic course. That result would extinguish the necessary managerial decision CT Page 915 making power required of the Trustees' office which is expressed in and implied from Chapter 185b of the General Statutes.[3] The power to set and determine the qualifications of instructors is central to the Trustees' duties to administer these colleges as provided by Chapter 185b of the Statutes and Section 10a-72 of the Statutes.
Whether a Math Instructor who has been laid off, as a part of a reduction in force has qualifications and skills equivalent or comparable to those necessary to teach college Chemistry and should be therefore permitted to "bump" another Chemistry Department employee is a matter of management prerogative about which it is not required to negotiate in the form proposed in Appendix E. The Trustees enjoy the sole prerogative to determine whether or not to reduce the work force. The trustees enjoy the sole prerogative to determine the qualifications of instructors. Union proposals about how to effect the reduction in force procedurally cannot have effect of extinguishing management's right to establish the qualifications of those persons who comprise the professional staff, and still be a legally mandatory subject of collective bargaining.
As to the declaratory ruling about Appendix E only, the Board of Trustee's Appeal is sustained.
FLYNN, J.