GREATER BRIDGEPORT TRANSIT DISTRICT *v.*
STATE BOARD OF LABOR RELATIONS ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     CV 91-281896S
FAIRFIELD AT BRIDGEPORT

Memorandum filed August 5, 1993

*Daly, Weihing & Bochanis,* for the plaintiff.

*Connecticut State Labor Relations Board,* for the named defendant.

*Robert M. Chevrie & Associates,* for the defendant Amalgamated Transit Union, and *Douglas Taylor,* pro hac vice, Local 1336, AFL-CIO.

LEHENY, J. The plaintiff Greater Bridgeport Transit District (transit district) appeals pursuant to General Statutes § 4-183 from a decision of the defendant state board of labor relations (board) in which the board ruled in favor of the defendant Amalgamated Transit Union, Local 1336, AFL-CIO (union).

On January 1, 1987, the transit district instituted a revised attendance policy for its employees.[1] At the time of this revision, a labor agreement entered into between the transit district and the union in 1979 was in effect.

---

[1] The revised attendance policy provides in relevant part: "Any reference to absence in the progressive attendance discipline program presented below defines absence as: (1) A single day of work missed; (2) An unexcused absence; (3) Providing further that in any given twelve month period, one incident of multiple day absence, if properly certified by a doctor's certificate shall be charged as only a single absence . . .

DISCIPLINE FOR ABSENTEEISM

(1) 6 absences—Warning, counseling and notification to employee in writing . . . that for all subsequent absences a doctor's certificate will be required; (2) 8 absences—3 days foot-of-list for operators 3 days shift change for maintenance; (3) 10 absences—5 days foot-of-list for operators 5 days shift change for maintenance; (4) 12 absences—10 days foot-of-list for operators 10 days shift change for maintenance; (5) 14 absences—5 days suspension; (6) 16 absences—Termination . . . .

Operators assigned for attendance-related discipline to the foot-of-list will report without guarantee."

On January 12, 1987, the union filed a complaint (Case No. U-10,358) with the board pursuant to the Connecticut State Labor Relations Act (CSLRA) alleging that the transit district had implemented the new attendance policy without negotiating with the union in violation of General Statutes §§ 31-105 (6), 7-469 and 7-470 (a) (4). Additionally, the union filed a demand for arbitration with the American Arbitration Association on February 13, 1987.

The board conducted an informal investigation of the complaint pursuant to General Statutes § 31-107 (a) of the CSLRA. Assistant agent Harold Lynch met with the transit district and the union on February 25, April 9 and June 4, 1987.

The union, thereafter, filed a complaint (Case No. 39-CA-3387) with the National Labor Relations Board (NLRB) alleging a violation under § 8 of the National Labor Relations Act (NLRA). On April 15, 1987, the NLRB concluded that the transit district, a political subdivision of the state of Connecticut, was exempt from its jurisdiction under § 2 (2) of the NLRA and dismissed the complaint in Case No. 39-CA-3387.

On August 26, 1987, the board sent notice to the parties that a hearing would be held on November 17, 1987. On September 15, 1987, the union filed a second complaint (Case No. MPP-10,843) with the board pursuant to § 7-471 (4) of the Municipal Employee Relations Act (MERA), General Statutes § 7-467 et seq., alleging that the transit district had violated General Statutes §§ 31-105 (6), 7-469 and 7-470 (a) (4). On September 21, 1987, the board notified the parties that the two complaints would be consolidated for hearing on November 17, 1987.

On November 16, 1987, the transit district filed with the Superior Court an application for a temporary and permanent injunction and order to show cause. On the same day, the union filed an answer and motion to dis-

miss the application for injunction. On November 17, 1987, the board filed a motion to dismiss the transit district's application for injunction.

On November 30, 1987, the board filed an amended motion to dismiss and, on December 4, 1987, the union filed an amended motion to dismiss. On May 26, 1988, the court, *Harrigan, J.*, dismissed the transit district's action on the ground that the court lacked subject matter jurisdiction as the transit district had failed to exhaust its administrative remedies. On June 13, 1989, the Supreme Court affirmed the trial court's dismissal of the transit district's action. *Greater Bridgeport Transit District* v. *Local Union 1336*, 211 Conn. 436, 440, 559 A.2d 1113 (1989).

Thereafter, on June 24, 1988, the board notified the parties that a hearing on the two consolidated complaints would be held on September 22, 1988. Subsequently, the board conducted evidentiary hearings on September 22 and December 7, 1988. On March 27, 1989, the parties submitted briefs to the board.

Exactly two years later, on March 27, 1991, the board issued a decision concluding that: "1. The Greater Bridgeport Transit District is a political subdivision of the State of Connecticut created pursuant to C.G.S. Section 7-273b et seq. and is a municipal employer within the meaning of Section 7-467 (1) of the Municipal Employees Relations Act. 2. A unilateral change in work rules creating disciplinary sanctions and introducing new changes in sick leave and attendance policies during the term of the parties' collective bargaining agreement will constitute a breach of the duty to bargain in good faith under C.G.S. Section 7-470 (a) (4), and a violation of the Act. 3. Where employees were discharged or otherwise disciplined as a direct result of certain unilateral changes made by an employer during the term of an existing collective bargaining agree-

ment, the policies of the Act require that they be made whole upon the finding of a violation."

The board dismissed the complaint (Case No. U-10,358) brought pursuant to the CSLRA and ordered the transit district to cease and desist from refusing to bargain with the union "over the unilateral changes in the sick leave, discipline for late attendance, and discipline for absences. . . ." In addition, the board ordered the transit district to "[r]einstate Ezell Robinson, Pamela Davis, and any other employees who were discharged under the unilaterally changed provisions . . . and make whole said employees together with all accruing back pay and associated benefits. . . ."

The transit district brings an appeal from this decision pursuant to General Statutes § 4-183. The transit district claims that the board's decision is illegal, arbitrary and an abuse of discretion in that: (1) the board's decision was not timely filed and as such the board exceeded its authority; (2) General Statutes § 7-273j was controlling rather than MERA, and, therefore, the board lacked jurisdiction; (3) the board erred in failing to defer to arbitration which was the primary remedy between the parties; (4) the transit district was given inadequate notice of the nature of the remedies and orders issued by the board; and (5) the board erred in determining that the new attendance policy was a mandatory subject of bargaining rather than a work rule. On May 4, 1991, the board filed an answer.

On September 4, 1991, the transit district filed a memorandum of law in support of its appeal. The board filed a brief on October 2, 1991.

On August 12, 1992, the union entered its appearance. On September 4, 1992, the union, which has not filed an answer, filed its brief.

"Appeals to courts from administrative agencies exist only under statutory authority." (Internal quotation marks omitted.) *Raines* v. *Freedom of Information Commission,* 221 Conn. 482, 489, 604 A.2d 819 (1992). "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Id. "Such provisions are mandatory, and, if not complied with, the appeal is subject to dismissal." (Internal quotation marks omitted.) Id., 490.

This court has jurisdiction to review the present matter pursuant to MERA. General Statutes § 7-471. Section 7-471 (5) (D) provides that: "For the purposes of hearings and enforcement of orders under sections 7-467 to 7-477, [concerning prohibited practices] inclusive, the board shall have the same power and authority as it has in sections 31-107, 31-108 and 31-109, and the municipal employer and the employee organization shall have the right of appeal as provided therein."

General Statutes § 31-109 (d) provides in relevant part, that: "Any person aggrieved by a final order of the board granting or denying in whole or in part the relief sought may appeal pursuant to the provisions of chapter 54 to the superior court . . . ." Under chapter 54, "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court. . . ." General Statutes § 4-183 (a).

"Unless a plaintiff can establish that he is aggrieved by a decision of an agency, he has no standing to appeal." *Kelly* v. *Freedom of Information Commission,* 221 Conn. 300, 308, 603 A.2d 1131 (1992), citing *Beckish* v. *Manafort,* 175 Conn. 415, 419, 399 A.2d 1274 (1978). The test for determining aggrievement is twofold: "[F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal

interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) *Munhall* v. *Inland Wetlands Commission,* 221 Conn. 46, 51, 602 A.2d 566 (1992); *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 493, 400 A.2d 726 (1978); *Nader* v. *Altermatt,* 166 Conn. 43, 51, 347 A.2d 89 (1974). "Aggrievement is established if there is some possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Rose* v. *Freedom of Information Commission,* 221 Conn. 217, 230, 602 A.2d 1019 (1992); *Hall* v. *Planning Commission,* 181 Conn. 442, 445, 435 A.2d 975 (1980); *O'Leary* v. *McGuinness,* 140 Conn. 80, 83, 98 A.2d 660 (1953).

The transit district has a specific personal and legal interest in the subject matter of the board's decision in that the decision involves the legal rights and obligations of the transit district under the collective bargaining agreement and under MERA. The transit district's legal interest in the decision has been specially and injuriously affected in that the labor board ruled against the transit district and in favor of the union. Thus, the transit district is aggrieved.

The July 1, 1989 amendments to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., do not apply where the agency proceedings were commenced prior to that date. *Raines* v. *Freedom of Information Commission,* supra, 221 Conn. 487, citing *Vernon Village, Inc.* v. *Carothers,* 217 Conn. 130, 138, 585 A.2d 76 (1991). Rather, "the statute in effect at the time that the administrative proceedings are commenced controls the action." *Fromer* v. *Boyer-*

*Napert Partnership,* 26 Conn. App. 185, 186 n.1, 599 A.2d 398 (1991), citing *Vernon Village, Inc.* v. *Carothers,* supra. As previously noted, the union filed its first complaint with the board on January 12, 1987. The agency proceeding, therefore, commenced on January 12, 1987, and the plaintiff must comply with the service of process provisions of § 4-183 as it existed prior to the 1989 amendments.

A party taking an appeal must do so by filing it with the Superior Court within forty-five days of the mailing of the final decision and serving the agency that rendered the final decision and all parties listed in the final decision within thirty days of the mailing of the final decision. General Statutes (Rev. to 1987) § 4-183 (b). Where there is no mailing date indicated in the record, it is appropriate for the reviewing court to utilize the date of the final decision in determining if service was made within the statutorily prescribed time. *Royce* v. *Freedom of Information Commission,* 177 Conn. 584, 585–86, 418 A.2d 939 (1979). In the present action, the decision of the board is dated March 27, 1991. Service was made upon the union on April 8, 1991 (twelve days) and upon the board on April 9, 1991 (thirteen days). The appeal was filed on April 9, 1991 (thirteen days). The appeal, therefore, is timely.

Judicial review of an administrative agency's action is governed by UAPA. *Ottochian* v. *Freedom of Information Commission,* 221 Conn. 393, 397, 604 A.2d 351 (1992). However, "the scope of review is limited." Id., citing *Board of Education* v. *Freedom of Information Commission,* 208 Conn. 442, 452, 545 A.2d 1064 (1988). "[T]he trial court may [not] retry the case or substitute its own judgment for that of the [administrative agency]." (Internal quotation marks omitted.) Id. "Rather, an agency's factual and discretionary determinations are to be accorded considerable weight by

the courts." *Lieberman* v. *State Board of Labor Relations,* 216 Conn. 253, 262, 579 A.2d 505 (1990).

The trial court is limited to deciding "whether the agency, in issuing its order, acted unreasonably, arbitrarily, or illegally, or abused its discretion." *Ottochian* v. *Freedom of Information Commission,* supra, 221 Conn. 397; General Statutes (Rev. to 1987) § 4-183 (g).[2] "Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) *Ottochian* v. *Freedom of Information Commission,* supra, 397. "If the [board's] findings are supported by substantial evidence, they cannot be disturbed. Substantial evidence is evidence which carries conviction. It is such evidence as a reasonable mind might accept as adequate to support a conclusion. It means something more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established." *L. Suzio Construction Co.* v. *State Board of Labor Relations,* 148 Conn. 135, 138, 168 A.2d 553 (1961); see also *Norwich* v. *Norwich Fire Fighters,* 173 Conn. 210, 214, 377 A.2d 290 (1977).

The transit district asserts that the board exceeded its authority in that it did not render its decision within

[2] General Statutes (Rev. to 1987) § 4-183 (g) provides that: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

ninety days as required by General Statutes § 4-180 (a).[3] General Statutes (Rev. to 1987) § 4-180 (b) provides in relevant part, that: "If any agency fails to comply with the provisions of subsection (a) . . . any party thereto or any interested person may apply to the superior court . . . for an order requiring the agency to render a decision forthwith, after hearing." "[T]he failure to raise a procedural claim or the failure to utilize a remedy available to cure a procedural defect can constitute a waiver of the right to object to the alleged defect." *Jutkowitz* v. *Dept. of Health Services,* 220 Conn. 86, 95, 596 A.2d 374 (1991). A plaintiff's failure to invoke the remedy provided in § 4-180 (b) constitutes a waiver of his right to object to the board's noncompliance with § 4-180 (a). Id., 96. The transit district waived its right to challenge the timeliness of the board's ruling by not applying to the Superior Court pursuant to § 4-180 (b) for an order requiring the board to issue its decision.

The transit district argues that the board erroneously decided that MERA was controlling in the resolution of this dispute. the transit district's position is that General Statutes § 7-273j, which specifically applies to transit districts, is in conflict with MERA but prevails over MERA's more general application to municipal employees.

Generally, courts will accord "considerable deference to the construction given a statute by the administrative agency charged with its enforcement . . . ." *Sutton* v. *Lopes,* 201 Conn. 115, 120, 513 A.2d 139, cert. denied sub nom. *McCarthy* v. *Lopes,* 479 U.S. 964, 107

---

[3] General Statutes (Rev. to 1987) § 4-180 (a) provides in relevant part that "[e]ach agency . . . shall render a decision in all contested cases within ninety days following the close of evidence and filing of briefs in such proceedings."

S. Ct. 466, 93 L. Ed. 2d 410 (1986). A departure from the usual rule of according deference is warranted, however, where the question of statutory construction "does not involve the application of open ended statutory language to a particular fact bound controversy, but rather concerns an issue of law about the scope of a Connecticut statute that this court has not previously interpreted." *Board of Education* v. *Board of Labor Relations,* 201 Conn. 685, 698, 519 A.2d 41 (1986).

Although "[i]t is well established that [a]s a matter of statutory construction, specific statutory provisions are presumed to prevail over more general provisions dealing with the same overall subject matter." (Internal quotation marks omitted.) *Hallenbeck* v. *St. Mark the Evangelist Corp.,* 29 Conn. App. 618, 624, 616 A.2d 1170 (1992). It is equally well established that "it is presumed that the legislature, in enacting a statute, acts with the knowledge of existing relative statutes and with the intention of creating one consistent body of law." (Internal quotation marks omitted.) *State* v. *Delossantos,* 211 Conn. 258, 283, 559 A.2d 164, cert. denied, 473 U.S. 8566, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989). "In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.) Id.

"Repeals by implication are not favored and will never be presumed where the old and new statute may well stand together. . . ." (Citations omitted; internal quotation marks omitted.) *Downey* v. *Retirement Board,* 22 Conn. App. 172, 180, 576 A.2d 582, cert. denied, 216 Conn. 812, 580 A.2d 65 (1990). "[W]hen two statutes relate to the same subject matter every effort should be made to find a reasonable field for the operation of both statutes . . . [and] where there is a reasonable field for each statute which does not impinge on the domain of the other, it is the court's

duty to give them concurrent effect." (Citation omitted; internal quotation marks omitted.) *Windham First Taxing District* v. *Windham,* 208 Conn. 543, 553, 546 A.2d 226 (1988).

Section 7-273j provides in relevant part: "Each transit district shall have power to engage in collective bargaining with duly appointed representatives of an employee labor organization and may enter into labor contracts concerning wages, salaries, hours, sick leave, working conditions, collective bargaining and pension or retirement provisions. In case of any labor dispute involving a district and its employees *where collective bargaining does not result in agreement,* the parties shall submit such dispute to arbitration . . . ." (Emphasis added.) General Statutes § 7-471 provides in pertinent part: "The State Board of Labor Relations shall have the following power and authority in relation to collective bargaining in municipal employment . . . (5) Whenever a question arises as to whether a practice prohibited by sections 7-467 to 7-477, inclusive, has been committed by a municipal employer or employee organization, the board shall consider that question . . . . If, upon all the testimony, the board determines that a prohibited practice has been or is being committed, it shall . . . issue and cause to be served on the party committing the prohibited practice an order requiring it or him to cease and desist from such prohibited practice, and shall take such further affirmative action as will effectuate the policies of sections 7-467 to 7-477 . . . ."

Although there may be cases where both statutes are applicable, the present action is not one of them. Section 7-273j provides for arbitration of a labor dispute where "collective bargaining" does not result in agreement. There is no dispute that in the present case the transit district implemented its revised attendance policy unilaterally without resort to collective bargain-

ing. Accordingly, it is MERA that applies to the resolution of this dispute, and not § 7-273j.

The transit district argues that even if it is subject to the board's jurisdiction under MERA, arbitration was the primary remedy in the present action. The transit district argues that because the parties had provided for a grievance procedure and arbitration under article 20 of the collective bargaining agreement, the board should have deferred to the pending arbitration.

In opposition, the defendants argue that under article 20 of the collective bargaining agreement, arbitration is only required for matters involving interpretation of the agreement itself. In addition, the defendants assert that deferral to arbitration is discretionary.

Our Supreme Court has consistently relied on federal labor law prcedent to interpret parallel state legislation, including MERA. *Danbury* v. *International Assn. of Firefighters, Local 801,* 221 Conn. 244, 251–52, 603 A.2d 393 (1992); *Stratford* v. *Local 134, IFPTE,* 201 Conn. 577, 589, 519 A.2d 1 (1986). "Where an employer and a union have voluntarily elected to create dispute resolution machinery . . . it is contrary to the basic principles of the Act for the Board to jump into the fray prior to an honest attempt by the parties to resolve their disputes through that machinery." (Citation omitted; internal quotation marks omitted.) *Hammontree* v. *NLRB,* 925 F.2d 1486, 1490–91 (D.C. Cir. 1991).

The National Labor Relations Board has adopted two separate deferral policies: (1) prearbitral deferral; and (2) postarbitral deference.[4] Id., 2481. Prearbitral deferment is appropriate where: "(i) there is a long-standing bargaining relationship between the parties; (ii) there

---

[4] Postarbitral deference refers to the deference a court will accord to arbitration awards and as such is not applicable to the present action. See *Hammontree* v. *NLRB,* supra, 925 F.2d 1490.

is no enmity by the employer toward the employee's exercise of rights; (iii) the employer manifests a willingness to arbitrate; (iv) the [collective bargaining agreement's] arbitration clause *covers the dispute at issue;* and (v) *the contract and its meaning lie at the center of the dispute.* " (Emphasis added.) Id., citing *Collyer Insulated Wire,* 192 NLRB 837, 77 LRRM 1931 (1971); *Local Union No. 2188, International Brotherhood of Electrical Workers* v. *NLRB,* 494 F.2d 1087, 1090–91 (D.C. Cir. 1974), cert. denied, 419 U.S. 835, 95 S. Ct. 61, 42 L. Ed. 2d 61 (1974) (affirming *Collyer* rule of NLRB deferral to grievance and arbitration procedures).

Article 20 of the collective bargaining agreement provides in relevant part: "Any dispute or controversy between the District and an employee covered by this Agreement, or between the District and the Union, *regarding the application or interpretation of any of the provisions of this Agreement,* shall constitute a grievance. All grievances shall be settled in the following manner . . . Step 4 . . . the Union may request arbitration by giving written notice to the American Arbitration Association at its Connecticut office and to the District requesting the appointment of an Arbitrator. . . . The *Arbitrator's authority shall be limited to interpreting and applying the provisions of this Agreement* and shall have no power to add, subtract or modify any of the provisions of this Agreement." (Emphasis added.)

Article 20 establishes only a binding settlement procedure with respect to the application and interpretation of the provisions of the agreement itself. The present dispute, however, does not involve the application or interpretation of the provisions of the collective bargaining agreement, but rather alleges that the transit district engaged in a prohibited practice, and thus violated MERA by unilaterally implementing a

revised attendance policy. The fourth and fifth prongs of the *Collyer* test, therefore, are not satisfied.

Furthermore, the labor board has adopted a policy of deferring to arbitration where arbitration has been invoked and the matter has reached the arbitration stage. *Matter of New Fairfield Board of Education,* Conn. Labor Relations Decisions, Case No. TPP-4347, Dec. No. 1666 (1978), citing *Matter of Town of Orange,* Conn. Labor Relations Decisions, Case No. MPP-3985, Dec. No. 1581 (1977); *Spielberg Mfg. Co.* v. *NLRB,* 112 NLRB 1080, 36 LRRM 1152 (1955). Although a request for arbitration was filed with the American Arbitration Association, arbitration proceedings had not yet begun and, in fact, had been stayed. Accordingly, the labor board's decision not to defer to arbitration was not improper and not an abuse of discretion.

The transit district claims that the orders of relief issued by the labor board were never requested in the complaint, and, therefore, it had inadequate notice of the scope of relief requested. A plaintiff has "a due process right to notice of the charges against him." *Fleishman* v. *Board of Examiners in Podiatry,* 22 Conn. App. 181, 191, 576 A.2d 1302 (1990). "If the notice of charges does not fairly apprise the person of the nature of the offense with which he is charged, the court may set aside the order of an agency for deficiency of notice." Id., citing *Murphy* v. *Berlin Board of Education,* 167 Conn. 368, 374–75, 355 A.2d 265 (1974). " '[T]he test of whether one is given adequate notice is whether it apprises him of the claims to be defended against, and on the basis of the notice given, whether plaintiff could anticipate the possible effects of the proceeding.' " *Fleishman* v. *Board of Examiners in Podiatry,* supra.

General Statutes (Rev. to 1987) § 4-177 (b) provides that, in contested cases: "The notice shall include: (1) A statement of the time, place, and nature of the hear-

ing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and regulations involved; [and] (4) a short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter *upon application a more definite and detailed statement shall be furnished."* (Emphasis added.)

Although the union failed to state the relief to which it deemed itself entitled as requested on the complaint form,[5] the plaintiff never brought an application for "a more definite and detailed statement" as permitted under § 4-177 (b). A plaintiff's failure to request a more definite and detailed statement constitutes a waiver of its right to question the sufficiency of the notice of relief requested. *Levinson* v. *Board of Chiropractic Examiners,* 211 Conn. 508, 536, 560 A.2d 403 (1989), citing *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority,* 188 Conn. 90, 95–96, 448 A.2d 210 (1982). The transit district, therefore, waived its right to question the sufficiency of the notice by not bringing an application for a more definite and detailed statement pursuant to § 4-177 (b).

General Statutes §§ 7-469[6] and 7-470 (c)[7] impose upon a municipal employer the duty to bargain collectively

---

[5] The complaint form provides in relevant part: "Please provide a clear and concise description of the acts which are claimed to constitute prohibited practices including an enumeration of the subdivisions of Section 7-470 claimed to have been violated and a statement of the relief to which the complainant deems himself entitled."

[6] General Statutes § 7-469 provides: "The municipal employer and such employee organization as has been designated as exclusive representative of employees in an appropriate unit, through appropriate officials or their representatives, shall have the duty to bargain collectively. This duty extends to the obligation to bargain collectively as set forth in subsection (c) of section 7-470."

[7] General Statutes § 7-470 (c) provides in relevant part: "[T]to bargain collectively is the performance of the mutual obligation of the municipal

with designated employee organizations "with respect to wages, hours and *other conditions of employment.*" (Emphasis added.) The labor board found that the revised attendance policy was a condition of employment subject to bargaining.

" 'The significance of calling something a "condition of employment" is that it then becomes a mandatory subject of collective bargaining.' " *Danbury* v. *International Assn. of Firefighters, Local 801,* supra, 221 Conn. 253, quoting *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 576, 295 A.2d 526 (1972). "The phrase conditions of employment limits the area of negotiability and excludes the sort of managerial decisions that lie at the core of entrepreneurial control." (Internal quotation marks omitted.) Id. The term "conditions of employment" is intended "to include the entire spectrum of conditions and benefits which apply to public employment, in addition to the commonly understood basic provisions relating to pay and hours of work, including but not limited to: seniority, grievance procedures, holiday and vacation pay, shift premiums, sick leave, jury duty, pensions and severance pay, insurance coverage of various kinds, seniority in promotions, transfers and layoffs, discipline and discharge and grievance arbitration provisions." (Internal quotation marks omitted.) *Board of Police Commissioners* v. *White,* 171 Conn. 553, 560, 370 A.2d 1070 (1976).

The transit district asserts that the revised attendance policy is a work rule and not a "condition of employment." Specifically, the transit district asserts

employer or his designated representatives and the representative of the employees to . . . confer in good faith *with respect to wages, hours and other conditions of employment,* or the negotiation of an agreement, or any questions arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party . . . ." (Emphasis added.)

that because the labor board defines "work rule" to include "workplace infractions which may result in discipline such as *tardiness, absenteeism,* and drinking on the job"; (emphasis added); the revised attendance policy should be considered a work rule. The labor board also stated, however, that "[d]iscipline, sick leave, and *attendance policies* are all mandatory subjects of bargaining." (Emphasis added.)

Furthermore, federal courts, interpreting the National Labor Relations Act, have held that "the imposition of *new* attendance or absenteeism rules for which employees may be disciplined is a change in terms and conditions of employment over which an employer is required to bargain." (Emphasis added.) *NLRB* v. *United Technologies Corp.,* 884 F.2d 1569, 1575 (2d Cir. 1989), citing *Ciba-Geigy Pharmaceuticals Division* v. *NLRB,* 722 F.2d 1120, 1126–27 (3d Cir. 1983) (employer violated the act by unilaterally implementing a new attendance control procedure); *Electri-Flex Co.* v. *NLRB,* 570 F.2d 1327, 1336 (7th Cir.), cert. denied, 439 U.S. 911, 99 S. Ct. 280, 58 L. Ed. 2d 256 (1978). An employer violates its duty to collectively bargain by unilaterally modifying employees' terms and conditions of employment. *Allied Chemical & Alkali Workers of America* v. *Pittsburgh Plate Glass Co.,* 404 U.S. 157, 185–86, 92 S. Ct. 383, 30 L. Ed. 2d 341 (1971); *NLRB* v. *United Technologies Corp.,* supra, 1574–75.

The record establishes that (1) the revised attendance policy altered the preexisting company policy respecting employee absences;[8] (2) the union objected to the

---

[8] See footnote 1 for the text of the revised attendance policy. The preexisting attendance policy provided in relevant part: "(1) When an operator incurs three (3) incidents of absence or six (6) days of absence in a six month period, over and above earned sick leave, the operator will be counseled from that day on. . . . (3) When an operator incurs another incident of absence or day or absence within six (6) months of the date of counseling, the operator will be issued a written warning and counseled. (4) When

proposed change; (3) the transit district implemented the new attendance policy without bargaining with the union; and (4) the transit district enforced the new policy to the extent of discharging employees for violations of the revised policy.

The transit district, however, argues that the union waived its right to bargain over changes in the attendance policy. "[A] union may waive its statutory right to bargain over a particular term or condition of employment." *NLRB* v. *United Technologies Corp.,* supra, 884 F.2d 1575; *NLRB* v. *C & C Plywood Corp.,* 385 U.S. 421, 430–31, 87 S. Ct. 559, 17 L. Ed. 2d 486 (1967); *NLRB* v. *Island Topographers, Inc.,* 705 F.2d 44, 48 (2d Cir. 1983). Because waiver of statutory rights by unions is disfavored, "the purported waiver 'must be clear and unmistakable.' " *NLRB* v. *United Technologies Corp.,* supra, 1575, quoting *Metropolitan Edison Co.* v. *NLRB,* 460 U.S. 693, 708, 103 S. Ct. 1467, 75 L. Ed. 2d 387 (1983). Waiver may be established by either an express provision in the collective bargaining agreement, or by the conduct of the parties, including past practices and bargaining history. *NLRB* v. *United Technologies Corp.,* supra, 1575. "An employer relying on a claim of waiver of a duty to bargain bears the burden of demonstrating it clearly and unmistakably." Id.

The transit district first argues that article 19 of the collective bargaining agreement authorizes the transit district to unilaterally modify the attendance policy.

---

an operator incurs a second incident of absence or day of absence within six (6) months of the date of the initial counseling, the operator will be issued a second warning. (5) When an operator incurs a third incident of absence or day of absence within six (6) months of the date of initial counseling, the operator will be issued a third and final warning and may be given a five (5) day suspension. . . . (6) When an operator incurs a fourth incident of absence or day of absence within six (6) months of the date of initial counseling, the operator may be terminated . . . ."

Article 19 provides in relevant part: "Work rules and operating rules will be promulgated by the District and copies will be posted . . . . These rules will be established for the efficient and expeditious operation of the District business and in order to clarify the obligations of employees." In addition, section I provides for various disciplinary measures for employees who report late. Furthermore, section I provides that "[t]he minimum guarantee of 8 hours and 40 hours does not apply if [an employee] is placed at the foot of the extra list as discipline for misses or other causes."

The language of article 19, however, does not grant the transit district the right to implement unilaterally attendance policies or disciplinary measures or any other conditions of employment. Article 19 merely authorizes the transit district to implement work rules and operating rules. Article 19 cannot be reasonably interpreted to authorize the transit district to act unilaterally with respect to mandatory subjects of bargaining.

Finally, the transit district argues that past practices of the union constitute a waiver of the union's right to bargain over changes in the attendance policy. Specifically, the transit district argues that because attendance policies have always been drafted and implemented by the transit district and have been deemed work rules that are not mandatory subjects of bargaining, the union has waived its right to bargain over the implementation of attendance policies. A waiver of the right to bargain collectively on one issue, however, is not a waiver for all purposes for all time. *Ciba-Geigy Pharmaceuticals Division* v. *NLRB,* supra, 722 F.2d 1127. " 'Each time the bargainable incident occurs—each time new rules are issued—[the] Union has the election of requesting negotiations or not.' " Id., quoting *NLRB* v. *Miller Brewing Co.,* 408 F.2d 12,

.15 (9th Cir. 1969). The record shows that the union sought the opportunity to bargain over the revised attendance policy.

Accordingly, for the aforementioned reasons, the court concludes that the record supports the labor board's finding that the transit district violated MERA.

Based on the foregoing, the appeal of the plaintiff transit district is dismissed.