GREATER BRIDGEPORT TRANSIT DISTRICT *v.* STATE
BOARD OF LABOR RELATIONS ET AL.
(15018)

CALLAHAN, NORCOTT, PALMER, F. X. HENNESSY and M. HENNESSEY, Js.

Argued November 29, 1994—decision released January 31, 1995

*Thomas J. Weihing*, with whom, on the brief, was *John T. Bochanis*, for the appellant (plaintiff).

*Joseph M. Celentano*, for the appellee (named defendant).

*Douglas Taylor*, with whom was *David McCarry*, for the appellee (defendant Amalgamated Transit Union, Local 1336).

PER CURIAM. The plaintiff, Greater Bridgeport Transit District (transit district), appealed to the Superior Court from a decision of the defendant state board of labor relations (board) in which the board ruled in favor of the defendant Amalgamated Transit Union, Local 1336 (union). That court affirmed the board's decision, and the plaintiff appealed from that judgment to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The underlying dispute between the transit district and the union involved the transit district's revised

attendance policy for its employees.[1] The revised policy was instituted unilaterally by the transit district on January 1, 1987. At that time, a collective bargaining agreement, entered into between the transit district and the union in 1979, was in effect.

[1] The revised policy provides for "attendance-related discipline" in addition to suspension and termination, where the original policy only provided for warnings, suspension and termination. The revised attendance policy provides in relevant part:

"1. 6 absences—Warning, counseling and notification to employee in writing . . . that for all subsequent absences a doctor's certificate will be required

"2. 8 absences—3 days foot-of-list for operators, 3 days shift change for maintenance

"3. 10 absences—5 days foot-of-list for operators, 5 days shift change for maintenance

"4. 12 absences—10 days foot-of-list for operators, 10 days shift change for maintenance

"5. 14 absences—5 days suspension

"6. 16 absences—Termination. . . ."

"Foot-of-list" refers to a disciplinary measure in which operators must report for duty and remain at work to back up the scheduled operator should an operator miss his shift. According to the policy, "[o]perators assigned for attendance-related discipline to the foot-of-list will report without guarantee," that is, without pay unless they actually substitute for another operator. "Shift change" for maintenance employees refers to a disciplinary measure in which they must work a shift that they did not select and do not wish to work.

The preexisting attendance policy provided in relevant part:

"1. When an operator incurs three (3) incidents of absence or six (6) days of absence in a six month period, over and above earned sick leave, the operator will be counseled from that day on. . . .

"3. When an operator incurs another incident of absence or day of absence within six (6) months of the date of counseling, the operator will be issued a written warning and counseled.

"4. When an operator incurs a second incident of absence or day of absence within six (6) months of the date of the initial counseling, the operator will be issued a second warning.

"5. When an operator incurs a third incident of absence or day of absence within six (6) months of the date of initial counseling, the operator will be issued a third and final warning and may be given a five (5) days suspension. . . .

"6. When an operator incurs a fourth incident of absence or day of absence within six (6) months of the date of initial counseling, the operator may be terminated. . . ."

On January 12, 1987, the union filed a complaint with the board pursuant to the State Labor Relations Act; General Statutes § 31-101 et seq.; alleging that the transit district had implemented the revised attendance policy without negotiating with the union in violation of General Statutes §§ 31-105 (6), 7-469 and 7-470 (a) (4).[2] Additionally, the union filed a demand for arbitration with the American Arbitration Association on February 13, 1987. On the union's motion, the arbitration was held in abeyance pending the outcome of the dispute before the board.

The union also filed a complaint with the National Labor Relations Board (NLRB) alleging a violation of § 8 of the National Labor Relations Act (NLRA), 29 U.S.C. § 158. The NLRB concluded that the transit district was a political subdivision of the state of Connecticut and, therefore, was exempt from its jurisdiction pursuant to § 2 (2) of the NLRA. Accordingly, the NLRB dismissed the complaint.

On September 15, 1987, the union filed a second complaint with the board, pursuant to General Statutes (Rev. to 1987) § 7-471 (4)[3] of the Municipal Employees

[2] General Statutes § 31-105 (6) provides in relevant part: "UNFAIR LABOR PRACTICES. It shall be an unfair labor practice for an employer . . . (6) to refuse to bargain collectively with the representatives of employees . . . ."

General Statutes § 7-469 provides: "DUTY TO BARGAIN COLLECTIVELY. The municipal employer and such employee organization as has been designated as exclusive representative of employees in an appropriate unit, through appropriate officials or their representatives, shall have the duty to bargain collectively. This duty extends to the obligation to bargain collectively as set forth in subsection (c) of section 7-470."

General Statutes § 7-470 provides in relevant part: "PROHIBITED ACTS OF EMPLOYERS AND EMPLOYEE ORGANIZATIONS. (a) Municipal employers or their representatives or agents are prohibited from . . . (4) refusing to bargain collectively in good faith with an employee organization which has been designated in accordance with the provisions of said sections as the exclusive representative of employees in an appropriate unit . . . ."

[3] General Statutes (Rev. to 1987) § 7-471 provides in relevant part: "POWERS OF STATE BOARD OF LABOR RELATIONS. The state board of labor

Relations Act (MERA); General Statutes § 7-407 et seq.; alleging that the transit district had violated §§ 31-105 (6), 7-469 and 7-470 (a) (4).

On November 16, 1987, the day before a scheduled hearing before the board on the two complaints,[4] the transit district filed in the Superior Court an application for a temporary and permanent injunction and an order to show cause to halt the hearing. The court dismissed the transit district's action on the ground that the court lacked subject matter jurisdiction because the transit district had failed to exhaust its administrative remedies. This court affirmed the dismissal. *Greater Bridgeport Transit District* v. *Local Union 1336*, 211 Conn. 436, 559 A.2d 1113 (1989).

The board thereafter held a hearing on the union's two consolidated complaints. Two years after the hearing,[5] the board rendered a decision concluding that the

---

relations shall have the following power and authority in relation to collective bargaining in municipal employment . . .

"(4) Whenever a question arises as to whether a practice prohibited by sections 7-467 to 7-477, inclusive, has been committed by a municipal employer or employee organization, the board shall consider that question in accordance with the following procedure . . . (B) If, upon all the testimony, the board determines that a prohibited practice has been or is being committed, it shall state its findings of fact and shall issue and cause to be served on the party committing the prohibited practice an order requiring it or him to cease and desist from such prohibited practice, and shall take such further affirmative action as will effectuate the policies of sections 7-467 to 7-477, inclusive, including but not limited to . . . (ii) reinstatement of an employee discriminated against in violation of said sections with or without back pay . . . ."

General Statutes § 7-471 was amended in 1991, adding a subdivision. Public Acts 1991, No. 91-255, § 2. Thus, subdivision (4), which was alleged in the union's complaint in 1987, became subdivision (5) in 1991 with the addition of the new subdivision, which is irrelevant to the instant case.

[4] The board had consolidated the complaints on September 21, 1987.

[5] The briefs of the parties were submitted to the board on March 27, 1989, after evidentiary hearings had been conducted on September 22, 1988, and December 7, 1988. The decision and order of the board was released on March 27, 1991.

transit district had violated MERA,[6] and ordered the transit district to cease and desist from refusing to bargain with the union "over the unilateral changes in the sick leave, discipline for late attendance and discipline for absences." In addition, the board ordered the transit district to "[t]ake the following affirmative steps which the [b]oard finds will best effectuate the purposes of the [a]ct: (a) Reinstate Ezell Robinson, Pamela Davis, and any other employees who were discharged under the unilaterally changed provisions . . . and make whole said employees together with all accruing back pay and associated benefits . . . (c) Report to the [board] within thirty (30) days of this Decision and Order of the steps taken by [the transit district] to comply therewith."

The transit district appealed from the board's decision to the Superior Court claiming that the board's decision was illegal, arbitrary and an abuse of discretion in that: (1) the board's decision had not been timely rendered; (2) General Statutes § 7-273j, concerning collective bargaining for transit districts, rather than MERA, was controlling and therefore, the board had lacked jurisdiction; (3) the board had erred in failing to defer to arbitration, which was the primary remedy between the parties in the collective bargaining agreement; (4) the transit district had been given inadequate notice of the nature of the remedies and orders issued by the board; and (5) the board had erred in determining that the new attendance policy was a mandatory subject of bargaining rather than a work rule.

The trial court resolved each of these issues in favor of the board, and dismissed the transit district's appeal. The transit district has raised the same issues on appeal before this court. We will briefly summarize seriatim

---

[6] Because the board found that MERA applied to this case, it dismissed the first complaint brought by the union pursuant to the State Labor Relations Act.

the trial court's reasoning in resolving each issue. First, the trial court found, based on precedent; *Jutkowitz* v. *Dept. of Health Services*, 220 Conn. 86, 95, 596 A.2d 374 (1991); that the transit district had waived its right to challenge the timeliness of the board's ruling by not applying to the Superior Court pursuant to General Statutes (Rev. to 1987) § 4-180 (b)[7] for an order requiring the board to issue its decision. Second, the trial court found that § 7-273j[8] would be relevant only if there was a labor dispute "where collective bargaining does not result in agreement." Because the parties in this case had not collectively bargained the disputed issue, the court concluded that application of § 7-273j would not be appropriate. Third, the court found that the plain language of the collective bargaining agreement provided for arbitration only when a dispute is over "the application or interpretation of any of the provisions of this Agreement." The dispute in this case, however, was over the unilateral implementation of a revised attendance policy in violation of the duty to bargain, which is a prohibited labor practice. Therefore, the board did not have to defer to arbitration. Fourth, the court relied on *Levinson* v. *Board of Chiropractic Examiners*, 211 Conn. 508, 536, 560 A.2d 403 (1989), citing *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority*, 188 Conn. 90,

---

[7] General Statutes (Rev. to 1987) § 4-180 (b) provides a remedy to the parties should the board fail to comply with § 4-180 (a) by not issuing a decision within ninety days: "If any agency fails to comply with the provisions of subsection (a) . . . any party thereto or any interested person may apply to the superior court . . . for an order requiring the agency to render a decision forthwith, after hearing. . . ."

[8] General Statutes § 7-273j provides in part: "Each transit district shall have power to engage in collective bargaining with duly appointed representatives of an employee labor organization and may enter into labor contracts concerning wages, salaries, hours, sick leave, working conditions, collective bargaining and pension or retirement provisions. In case of any labor dispute involving a district and its employees *where collective bargaining does not result in agreement,* the parties shall submit such dispute to arbitration . . . ." (Emphasis added.)

95–96, 448 A.2d 210 (1982), to conclude that the transit district had waived its right to question the sufficiency of the notice of the relief requested by not requesting a more definite and detailed statement as permitted under General Statutes (Rev. to 1987) § 4-177 (b).[9] Finally, based on both Connecticut and federal case law, the trial court found that the revised attendance policy, which included disciplinary measures,[10] was a "condition of employment," and therefore a mandatory subject of bargaining pursuant to §§ 7-469 and 7-470 (c). See *Board of Police Commissioners* v. *White*, 171 Conn. 553, 560, 370 A.2d 1070 (1976) (defining the term "conditions of employment" as that which "is intended to include the entire spectrum of conditions and benefits which apply to public employment, in addition to the commonly understood basic provisions relating to pay and hours of work, including but not limited to . . . discipline and discharge").

"Judicial review of the [board's] action is governed by the Uniform Administrative Procedure Act (Gen-

[9] General Statutes (Rev. to 1987) § 4-177 (b) provides in relevant part: "If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter upon application a more definite and detailed statement shall be furnished."

Although *Levinson* v. *Board of Chiropractic Examiners*, supra, 211 Conn. 536, is controlling, we note that the complaint form issued by the board states that the complaint is brought "[p]ursuant to Section 7-471 (4) [Rev. to 1987] of the Municipal Employees Relations Act." Section 7-471 (4) (currently § 7-471 [5]) provides that "[i]f, upon all the testimony, the board determines that a prohibited practice has been or is being committed, it shall state its findings of fact and shall issue and cause to be served on the party committing the prohibited practice an order requiring it or him to cease and desist from such prohibited practice, *and shall take such further affirmative action as will effectuate the policies of sections 7-467 to 7-477, inclusive, including but not limited to . . . (ii) reinstatement of an employee discriminated against in violation of said sections with or without back pay . . . .*" (Emphasis added.) This appears to have been sufficient to put the transit district on constructive notice of the power that the board possessed should the union have been successful on the merits of its claim.

[10] See footnote 1.

eral Statutes, c. 54, §§ 4-166 through 4-189), and the scope of that review is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [board]. . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [board] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations omitted; internal quotation marks omitted.) *Buckley* v. *Muzio*, 200 Conn. 1, 3, 509 A.2d 489 (1986); see also *Starr* v. *Commissioner of Environmental Protection*, 226 Conn. 358, 371, 627 A.2d 1296 (1993); *Caldor, Inc.* v. *Heslin*, 215 Conn. 590, 596, 577 A.2d 1009 (1990), cert. denied, 498 U.S. 1088, 111 S. Ct. 966, 112 L. Ed. 2d 1053 (1991).

Our examination of the record and the briefs and arguments of the parties on appeal persuades us that the judgment of the trial court should be affirmed. The issues raised on appeal were resolved properly in the court's thoughtful and comprehensive memorandum of decision. *Greater Bridgeport Transit District* v. *State Board of Labor Relations*, 43 Conn. Sup. 340, 653 A.2d 229 (1993). Because that memorandum of decision fully states and meets the arguments raised in the present appeal, we adopt the trial court's well reasoned decision as a statement of the facts and the applicable law on these issues. It would serve no useful purpose for us to repeat the discussion contained therein. *Advanced Business Systems, Inc.* v. *Crystal*, 231 Conn. 378, 380–81, 650 A.2d 540 (1994); *Van Dyck Printing Co.* v. *DiNicola*, 231 Conn. 272, 273–74, 648 A.2d 877 (1994); *Connecticut Resources Recovery Authority* v. *Refuse Gardens, Inc.*, 229 Conn. 455, 458–59, 642 A.2d 697 (1994); *Daw's Critical Care Registry, Inc.* v. *Dept. of Labor*, 225 Conn. 99, 101–102, 622 A.2d 518 (1993).[11]

The judgment is affirmed.

---

[11] In response to the board's order, the transit district rescinded its unilaterally implemented attendance policy and eliminated the discipline

imposed on employees pursuant to that policy. It did not, however, reinstate or reimburse any discharged employees. There is no indication that the transit district reported to the board the steps that it had taken to comply with the board's order. It presumably would have to do so now. In attempting to demonstrate compliance, the transit district should be allowed to present evidence in mitigation of its damages. See *National Labor Relations Board* v. *Mastro Plastics Corp.*, 354 F.2d 170, 178 (2d Cir. 1965), cert. denied, 384 U.S. 972, 86 S. Ct. 1862, 16 L. Ed. 2d 682 (1966) (discharged employees have duty to mitigate their damages); *Coppola* v. *Personnel Appeal Board*, 174 Conn. 271, 275, 386 A.2d 228 (1978) (evidentiary hearing is necessary to determine amount of lost back pay and benefits).