[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Town of Colchester (hereinafter "Colchester"), from a decision of the defendant State Board of Labor Relations (hereinafter "Board"), determining that Colchester violated Conn. Gen. Stat. § 7-470(a)(4) by refusing to bargain in good faith over the wages, hours, and working conditions of its finance director. The Board based its decision on its prior ruling that Colchester's finance director be included as a member of the bargaining unit. Colchester claims both decisions are erroneous in that the finance director should be excluded because (1) she is "a department head" within the meaning of C.G.S. § 7-467(4) and/or (2) she is a confidential employee.
The procedural history and factual background of this case are as follows.
Plaintiff Colchester is a municipal corporation and a municipal employer within the meaning of the Municipal Employees Relations Act ("MERA" or the "Act") Conn. Gen. Stat. § 7-467 et seq. Defendant Municipal Employees Union Independent ("MEUI" or the "Union") is an employee organization eligible to petition for exclusive representation of a group of municipal employees. § 7-467a. Defendant Board is a state agency charged with certifying the scope of municipal employee bargaining units and more specifically with determining "whether a position is covered by §§ 7-467 — 7-477, inclusive in the event of a dispute between the municipal employer and an employee organization." § 7-471(2).
On August 5, 1997, MEUI filed a petition for certification with the Board seeking to represent a proposed bargaining unit consisting of "administrative employees of the Town of Colchester, including but not limited to: assessor, engineer, fire marshall, fleet maintenance superintendent, finance director, park and recreation director, planner, road crew superintendent, social services director and youth service director." The Town and the Union agreed that the park and recreation director and planner positions should be excluded from the proposed unit. However the Town challenged the Union's inclusion of the finance director position in the proposed unit.
On May 18, 1998, a formal hearing was held before the Board to consider CT Page 10973 the matter of inclusion of the finance director in the bargaining unit. Testimony was given and evidence submitted by both parties. On December 3, 1998, the Board determined that the finance director should be included as a position within the newly certified "administrative employees" bargaining unit. On January 29, 1999, the Town and Union negotiating committees met to negotiate a collective bargaining agreement. At that meeting the Town refused to bargain with the Union over the wages, hours of work, and other conditions of employment for the finance director. On February 16, 1999, the Union filed a complaint with the Board charging the Town with violation of § 7-470(a)(4) of the Act. The Town and the MEUI agreed to waive their right to an evidentiary hearing on the merits of the Union's complaint and agreed that the Board could decide the case on the basis of a stipulation of facts and exhibits which consisted of the entire record before the Board of the bargaining unit dispute and determination. The Board issued its decision and order on September 13, 1999 in which it rejected the Town's objection to the Board's inclusion of the finance director in the bargaining unit and found that the Town had violated § 7-470(a)(4) of the Act. It ordered the Town to cease and desist from refusing to bargain with MEUI over the wages, hours and working conditions of the finance director position. The Town appealed the Board's decision.
The Supreme Court has held that a municipal employer is only entitled to appeal to the Superior Court, pursuant to § 4-183, a Board bargaining unit determination after a Board determination of an unfair labor practice. Town of Windsor v. Windsor Police Department EmployeesAssociation, Inc., 154 Conn. 530, 539 (1967). As a result, this appeal is timely. The court also finds that Colchester is statutorily aggrieved and thus has standing to bring this action. The Greater Bridgeport TransitDist. v. State Board of Labor Relations, 43 Conn. Sup. 340, 346 (1993).
The appeal is governed by the Uniform Administrative Procedures Act. (§ 4-183 et seq.) Our courts have recognized that labor relations acts are remedial in nature and "should be liberally construed in order to accomplish their objectives and that in furtherance of this principle, exceptions and exclusions are to be strictly construed. SuccessVillage Apartments v. Local 376 UAW, et al, 175 Conn. 165, 168 (1979). In this regard, it is also well established that courts should `accord great deference to the construction given the statutes by the agency charged with its enforcement.' [citations omitted]. We are mindful moreover of the fact that traditionally a large degree of discretion has been accorded labor boards as regards bargaining unit determinations." Conn.State Board of Labor Relations v. Board of Education, 177 Conn. 68, 74
(1979). Nevertheless, this case presents a question of law turning upon the interpretation of a statute. "Such a question invokes a broader standard of review than is ordinarily involved in deciding whether in CT Page 10974 light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." Town of Southington v.Connecticut State Board of Labor Relations, 210 Conn. 549, 558-59
(1989). The construction and interpretation of statutes are particularly the function of the courts, and although deference may be given to administrative agency determinations, the courts must still determine whether or not the agency correctly applied the statute to the facts found. Hartford v. Freedom of Information Commission, 41 Conn. App. 67,72 (1996); New Haven v. Freedom of Information Commission, 205 Conn. 767,774 (1988).
The plaintiff asserts two grounds for this appeal: (1) the Board erred in deciding that the finance director position did not meet the criteria for the department head exemption; (2) the Board erred in deciding that the finance director did not meet the criteria for the confidential employee exclusion.
The Municipal Employee Relations Act, § 7-467 et seq., excepts from the definition of"employee", subject to the Act, "department heads". Section 7-467(2). A "department head" is defined in § 7-467(4) as "an employee who heads any department in a municipal organization, has substantial supervisory control of a permanent nature over other municipal employees, and is directly accountable to the Board of Selectmen of a town, city or borough . . . or to the chief executive officer of any other town, city or borough;" Section 7-467(5) defines "department" to mean "any major functional division in a municipal organization, notwithstanding the provisions of any charter or special act to the contrary;"
Thus, a "department head" must have all three of the following characteristics: (1) be directly accountable to the Board of Selectmen of the town, (2) have substantial supervisory control of a permanent nature over other municipal employees, and (3) head a major functional division of town government.
The Board found and the parties agree that the finance director is accountable to the selectman of the town of Colchester so that criterion is met.
On the issue of the finance director's supervisory control, the Board found and concluded as follows: "Wasicki [the finance director] appears to have no greater supervisor control than any other person in the instant supervisory unit. She has one and one-half employees in the finance department, hardly the number of employees required for a greater than normal supervisor/employee ratio to warrant exclusion." CT Page 10975
In 1983, the General Assembly enacted Public Act 83-503 that changed the definition of department head. In the Board's decision in Town ofSouthington, decision No. 2451 (1985), the Board took account the changes made of Public Act 85-503 as follows:
 With regard to supervisory control, P.A. 83-503 places a somewhat different emphasis than we did in our decisions. We tended to look toward the number of employees supervised as being significant. From the debate in the House of Representatives, it is evident that its members were very aware of our decisions. Yet the language enacted in P.A. 83-503 states that a department head must have "substantial supervisory control of a permanent nature over other municipal employees." If the General Assembly had meant supervisory control over a substantial number of employees, as we had previously interpreted the Act, it could have said so. Rather, the General Assembly framed P.A. 83-503 in terms of the degree of supervisory control over whatever employees the person in question supervised.
The Supreme Court in Town of Southington v. Connecticut State Board ofLabor Relations, supra, in affirming the trial court's dismissal of the appeal of the Board's decision, stated at 554: "Third, the Act substituted a new test for supervisory control that, instead of looking to the number of supervised employees, required that a department head must have "substantial supervisory control of a permanent nature over other municipal employees'. The board stated that it had not before required that, to be a department head, an individual have a degree of supervisory control greater than that of non-department head supervisors. In view of the new act, however, the Board decided that to be a department head one must do more than merely meet the definition of supervisor, one must actually have substantial supervisory control."
The record in this case reveals that the finance director has the power to hire her subordinates, discipline them, recommend firing them, counsel them, schedule their work, assign their work, oversee their training and review their work.[1] The finance director also establishes performance standards for her subordinates and takes corrective measures to implement those standards. She also has the power to grant her subordinates permission to take sick days, personal days and vacations, and actually acts a second in command at the town hall if the first selectwoman is absent. In fact, on those occasions she has day to day administrative authority.[2]
CT Page 10976
The First Selectman's organizational chart lists all department heads (Exhibit 5). The First Selectwoman was asked:
Q. Out of all the department heads listed in Exhibit 5, who is given the most authority by you?
A. Maggie [the Finance Director].
Furthermore, the finance director is a department head with the authority to make an initial determination of the merits of a grievance under the collective bargaining contract.
In the Board's decision in Town of Southington, decision No. 2451, the Board concluded that the sewer superintendent met the criterion of supervisory control when he had the power to hire his employees. In the Board's decision in City of Milford, decision No. 3562 (1997), the Board found the librarian met the criterion of supervisory control in that he prepares the library budget and has "the authority to discipline and he is `department head' step in the collective bargaining agreements grievance procedure. He has the effective right to hire employees . . . We conclude that Stingo [the librarian] exercised the requisite managerial authority to meet the second criteria (sic)." In the Board's decision in City ofNew Haven No. ME 12,257, the Board found the parks and recreation director met the supervisory criterion because he can fire employees and "he sets and enforces performance standards for subordinate employees."(p. 6)
Likewise in the Board's decision in Town of Wallingford, decision No. 2612 (1988), the Board held "[Parks and Recreation Director] exercised a degree of permanent supervisory control over other municipal employees which is greater than what is necessary to qualify the person merely as a supervisor under the act [because] [h]e hires and fires employees in his department, he is a step in the grievance procedure for those employees who are in a bargaining unit, and he sets performance standards for those employees.
In its decisions the Board has recognized that "substantial supervisory control", as referred to in § 7-467(4), means more than the duties of a supervisor. Section 7-471(3) provides that in order to insure a clear and identifiable community of interest among employees, no collective bargaining unit shall include both supervisory and non-supervisory employees. Section 7-471(2) provides:
 In determining whether a position is supervisory the board shall consider, among other criteria, whether the principal functions of the position are CT Page 10977 characterized by not fewer than two of the following: (A) Performing such management control duties as scheduling, assigning, overseeing and reviewing the work of subordinate employees; (B) performing such duties as are distinct and dissimilar from those performed by the employees supervised; (C) exercising judgment in adjusting grievances, applying other established personnel policies and procedures and in enforcing the provisions of a collective bargaining agreement; and (D) establishing or participating in the establishment of performance standards for subordinate employees and taking corrective measures to implement those standards.
The record here indicates that the finance director in this case meets all the criteria of a supervisor, namely: (1) performs management control duties, such as scheduling, assigning, overseeing and reviewing the work of subordinate employees, (2) performs duties distinct and dissimilar from those performed by the employees supervised; (3) exercises judgment in adjusting grievances, applying established personnel policies and enforcing the provisions of the collective bargaining agreement, and (4) establishes performance standards for subordinate employees and takes corrective measures to implement those standards. By performing all four functions, instead of the two required by § 7-471(2), the finance director exercises more supervisory control than a supervisor. In Town ofWallingford, No. 2612, supra, the Board noted the town engineer met the supervisory criterion when he met "not just two but all four of the supervisory criterion of § 7-471(2)." (p. 5)
Thus, this court concludes that based on the Board's own standards as applied in previous cases, the principles propounded by the Supreme Court in Southington v. State Board of Labor Relations, supra, the Board's determination that the finance director here does not meet the second criterion of a department head in not exercising "substantial supervisory control" over her employees misapplies § 7-467(4) to the facts of this case, (Hartford v. Freedom of Information Commission, supra), and is clearly erroneous in view of the substantial evidence on the whole record. § 4-183(j).
The third criterion is whether or not the finance director heads a municipal department. In this regard the organizational chart of the town is not controlling. As defined by § 7-467(5) a department means the head of "a major functional division in a municipal organization, . . ."
In this case, the Board found as to this criterion that: "Wasicki heads a department which, as noted above, constitutes a minimal portion of the CT Page 10978 town's budget." In Southington v. State Board of Labor Relations, supra, 554, the Supreme Court dealt with the meaning of "major functional division" as stated in § 7-467 (4) as follows.
 The Board analyzed the impact of the change from its definition of `department' as being one of the largest divisions of government to being, under the act, a `major functional division' of government. The board decided that: (1) this is an expansion of its prior definition of `department'; (2) the concept of a `major functional division' must be considered within the context of the particular municipality in question; (3) what might be a major functional division in a small town, may not be a `major functional division in a large city; (4) whether a division is major must be determined in view of objective factors such as the division's budget, staff size, and control over the use of municipal resources; and (5) it is inappropriate for the board to base its decision upon its own notions of what, in relative terms, is more or less important function of local government. (Emphasis added.)
The record reveals that the amount allocated to the finance department (accounting) was $113,058 for the 1997-1998 budget. This represents 11% of the amount of $980,763 allocated for general government in the 1997-1998 budget. However, the finance director oversees municipal resources in the amount of $5,949,220 of the town's total budget of $10,291,926, or 57.8%. In this regard, the finance director has substantial responsibility respecting financial operations of the town of Colchester. She gathers all the information from other town departments and puts together a draft budget for the board of selectmen and board of finance. She insures a compliance with budgeted expenses so that appropriated amounts are not exceeded. She signs town checks. She confers with the town bond counsel and prepares documents for bond sales. She meets with and negotiates with the town's insurance agent on town insurance premiums and oversees the payments to and co-payments of health insurance by employees. She administers the worker's compensation system. She handles all state and other grants to the town and its agencies and assures that grant monies are properly expended. She polices the personnel policies on a town-wide basis to insure that the terms and conditions of the collective bargaining contract are followed through. Finally, in the absence of the First Selectwoman the finance director administers the town on a day to day basis.
The scope level and degree of control exercised by the finance director CT Page 10979 makes her situation analogous to that of the town engineer in Wallingford. In Town of Wallingford, decision No. 2612 at p. 4 (1988), the Board held that the town engineer qualified as head of a "major functional division" of the town on the grounds that, although the town engineer's budget was not large, "in addition to funds appropriated to his department, the town engineer is involved with planning and supervising projects at the request of many other town departments. This provides this department with control over the use of substantial municipal resources budgeted to other departments as well as his own."
Based upon the Board's own standards applied in previous cases, and principles propounded by the Supreme Court in Southington v. State Boardof Labor Relations, supra, the court concludes the Board's determination that the finance director does not head "a major functional division" of the town of Colchester misapplies § 7-467(4) to the facts of this case and is erroneous in view of the substantial evidence on the whole record. § 4-183(j).
As a consequence, the court concludes that the finance director meets all three criteria of the head of a department as defined in § 7-467(4) and should be excluded from the bargaining unit.
While sedulously avoiding substituting its judgment for that of the Board on matters of fact, the court determines that the Board has either misinterpreted the definition of "department head" in § 7-467(4) or misapplied the facts of this case to that definition, and so came to an incorrect conclusion.
In light of this determination, the court will not consider the second ground for exclusion asserted by the plaintiff that the finance director is a confidential employee.
Plaintiff's appeal from the Board's decision is sustained.
Robert Satter Judge Trial Referee