[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Reginald Patchell, appeals from the October 24, 1997, decision of the defendant, Employees' Review Board ("ERB"), which upheld the decision of the defendant Department of Corrections ("DOC") to terminate the plaintiff from his position as a Lieutenant at the Raymond L. Corrigan Correctional Institution in Uncasville, Connecticut. The plaintiff brings this appeal pursuant to General Statutes § 4-183. The plaintiff is aggrieved by the ERB's decision.
As a result of an incident on July 11, 1996, the warden at Corrigan Correctional Institution notified the plaintiff that he was being dismissed as of November 29, 1996 for using excessive force on an inmate. The plaintiff appealed his dismissal through the appropriate steps to the defendant ERB pursuant to General Statutes § 5-202 et seq. ERB upheld the decision of the defendant DOC, issuing a memorandum of decision dated October 24, 1997. The other named defendant, the Connecticut Department of Administrative Services, is charged with overseeing and establishing personnel policy for the State of Connecticut and its agencies and departments, pursuant to General Statutes § 4a-1 et seq.
Included within the memorandum of decision of the ERB were the following findings of fact:
1. The Grievant was employed by the Department of Corrections from March 23, 1984 until November 14, 1996, the latter three and one half (3-1/2) years as a Lieutenant; he is an CT Page 5961 employee within the meaning of the Act.
 2. Estaban Nieves was an inmate at the Corrigan Correctional Institution (the facility) during all times relevant to this matter.
 3. At approximately 8:50 p. m. on July 11, 1996, inmate Nieves, along with several other inmates who were being returned from court, entered the facility AP area for return processing. After being held in the holding area Nieves was escorted into the facility strip room. During the strip search of Nieves being conducted by Correction Officer Roy in the small strip room while the inmate was quiet and under control, Lieutenant Patchell entered the small strip room and placed Nieves under physical restraint by grabbing the inmate's arm and neck. Lieutenant Patchell then told Nieves not to spit on his officers, or words to that effect. Patchell then left the small search room.
 4. Correction Officer Roy continued the strip search of Nieves as Correction Officer Murphy entered the small search room after Lieutenant Patchell had departed. After exchanging vulgarities with the inmate, Correction Officer Murphy proceeded to assault Nieves punching him several times in the body and head.
 5. The facility Medical Incident Report for July 11, 1996, at 9:10 p. m. indicated that Nieves was treated for a 6mm laceration on the right side of his scalp. He was treated by applying pressure and cleansing the area which showed that he had sustained abrasions to the right side of his neck. The inmate was reported to be "agitated, non compliant, and non cooperative."
 6. Department of Corrections Administrative Directive 6.5 provides in part as follows:
 1. Policy. Use of force shall be authorized only when reasonably necessary to protect any person, prevent escape, prevent damage to property, or enforce a lawful order. The level of force shall be minimal, incremental and appropriate to the immediate circumstances.
4. General Principles.
CT Page 5962
 A. Force shall not normally be used when an inmate is under control. Confrontation D. The use of force shall be prohibited for the routine enforcement of unit rules. E. Force shall not be used for the harassment or punishment of any person.
 7. Regulations Section 5-240-1a through 5-204-8a of the Act provides in relevant part that an employee may be dismissed for "just cause" which includes the following:
 4. Offensive or abusive conduct toward . . . inmates . . . of State institutions or facilities. 8. Deliberate violation of any law, State regulation or agency rule.
 8. On August 26, 1996, Major Krajniak (then Captain), was assigned by the Warden of the Corrigan Facility to investigate the above incident. After interviewing the inmate and a number of Correction Officers who were witnesses, Major Krajniak reported the results of her investigation to the Warden on September 19, 1996. (See State Exhibit 7, page 4). In that report the investigating officer found, among other things:
 Lieutenant Patchell engaged in physical and verbal assaults against Inmate Nieves during the performance of a strip search which is in a violation of Administrative Directive 2.17, Employee Conduct and Administrative Directive 6.5, use of Force.
 Lieutenant Patchell was less than truthful during the Administrative investigation which is a violation of Administrative Directive 2.17, Employee Conduct.
 9. Administrative and Unit Directive 2.17, Employee Conduct provides, in part:
 A. Each Department Employee shall: 18. Cooperate fully and truthfully in any inquiry or investigation conducted by the Department of Correction and any other law enforcement or regulatory agency.
10. By letter dated November 14, 1996, the Warden at the CT Page 5963 Corrigan Facility advised Lieutenant Patchell that he was being dismissed as of November 29, 1996, for using "excessive force on an inmate."
(Return of Record ("ROR"), Item 1, Memorandum of Decision, pp. 2-4).
Although advanced under several categories, the plaintiff's arguments can, be categorized into two main issues. The first issue is whether the ERB decision was founded upon substantial evidence in the record, and the second is whether ERB fulfilled its statutory mandate to consider the equities when reviewing the penalty of dismissal imposed on the plaintiff.
The court's "review of an agency's factual determination is constrained by General Statutes § 4-183(j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. . . . This limited standard of review dictates that, [w]ith regard to questions of fact, it is not the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." (Citations omitted; internal quotation marks omitted.) NewEngland Cable Television Assn., Inc. v. DPUC, 247 Conn. 95, 117-18
(1998).
Here, the plaintiff argues that the ERB decision is erroneous and unreasonable in view of the facts and testimony. The plaintiff argues that the eyewitness testimony of former corrections officer Alan Roy was not credible and was CT Page 5964 contradicted by the testimony of other witnesses called by the plaintiff. Roy had witnessed the incident between the plaintiff and the inmate. Officer Roy's testimony was corroborated by other testimony and by the DOC internal investigation. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Dolgner v. Alander,237 Conn. 272, 281 (1996). Thus, the plaintiff's claim that the testimony of the witnesses supports the possibility of drawing two inconsistent conclusions from the evidence does not mean that the ERB's findings are not supported by substantial evidence. The plaintiff's dismissal was based on his improper conduct which occurred in the strip search room, for which there is substantial evidence in the record.
The plaintiff also contends that the ERB decision unreasonably relied on the DOC investigation. Captain (now Major) Lori Krajniak had been assigned on August 26, 1996, by the warden of the Corrigan facility to investigate the incident. Captain Krajniak interviewed the inmate involved as well as a number of corrections officers who were witnesses, and then prepared a report for the warden on September 19, 1996. In her report Captain Krajniak concluded that the plaintiff had used excessive force on the inmate. In her report Captain Krajniak credits the testimony of Officer Roy and the inmate involved. The ERB found that Captain Krajniak had conducted a thorough and professional investigation and that Officer Roy's testimony was credible and untainted. There is substantial evidence in the record to support those conclusions. The fact that ERB did not accept and credit the plaintiff's version of the events does not impact ERB's finding. ERB was under no obligation to accept the plaintiff's version or believe the plaintiff's witnesses. Krajniak testified at the hearing that the other officers (plaintiff's witnesses) did not support Officer Roy because of an unwritten "code of blue". (ROR, Item 18, Excerpt from May 7, 1997 ERB Hearing, pp. 14-15; ROR, Item 41, Transcript of June 23, 1997 ERB Hearing, pp. 137 38.) Although plaintiff complains of this testimony, the testimony about this unwritten code of silence was evidence based upon Krajniak's experience with DOC. The plaintiff submitted no evidence to counter Krajniak's testimony in that regard. Viewing the record as a whole, the ERB did not unreasonably rely on the DOC investigation conducted by Captain Krajniak.
Next, the plaintiff contends that ERB issued its decision more than sixty days after the conclusion of the hearings in CT Page 5965 violation of General Statutes § 5-202(b). Section 5-202(b) provides in pertinent part: "the hearing panel shall render a decision within sixty calendar days from the date of the conclusion of the hearing." The plaintiff considers the last day of the hearing as the conclusion of the hearing. However, in this case, post hearing briefs were filed by both parties. The plaintiff's brief was dated August 29, 1997 and the DOC brief was dated August 28, 1997. Under the regulations of Connecticut State Agencies, § 5-201-16(c)(1): "The panel shall render its final decision on the appeal within sixty days following the close of evidence or the last due date for filing of briefs, whichever is later." Here, the ERB decision was issued on October 24, 1997, clearly within sixty days after the dates on the briefs. Accordingly, the ERB decision was timely. In addition, the plaintiff waived any claim of error based on untimeliness by failing to utilize the procedure set forth in General Statutes § 4-180(b), which permits a party to apply to the Superior Court if the agency fails to render a decision within ninety days of the close of the evidence or the due date for the filing of briefs, whichever is later. See Pet v. Dept. of Health Services,228 Conn. 651, 674 (1994); Greater Bridgeport Transit District v.State Board of Labor Relations, 232 Conn. 57, 62-64 (1995).
The plaintiff argues that the ERB misconstrued the authority granted to it under General Statutes § 5-202(b) by deciding that it did not possess the power to consider whether the penalty of dismissal of the plaintiff was unwarranted or excessive. Addressing this issue in its discussion, the ERB wrote:
It was further argued that even if this Board finds that the State acted with reasonable cause, the penalty of dismissal was un-warranted and excessive, in which case this Board has been asked to provide a remedy consistent with this Board's authority. On its face the statute appears to clearly provide that the Board's power is limited to reviewing the action of the employer which the Board has found to be arbitrary and taken without reasonable or just cause. Additionally, a review of the Administrative Directives relevant to this matter and included in the record already gives the State authority to dismiss Patchell on the evidence which was presented to us. Nothing presented to this panel demonstrates or convinces us that the penalty of dismissal was not based on just or reasonable cause. Accordingly, this Board find no basis for substituting its judgment for the judgment of dismissal by the State. CT Page 5966
(ROR, Item 1, Memorandum of Decision, p. 5).
The plaintiff argues that the ERB had the authority to re-determine the type of discipline warranted notwithstanding the fact that it had decided to uphold the employer's action. The statute on which the plaintiff relies, General Statutes § 5-202(b), provides in pertinent part:
 If, after hearing, a majority of the hearing panel determines that the action appealed from was arbitrary or taken without reasonable cause, the appeal shall be sustained; otherwise, the appeal shall be denied. The hearing panel shall have the power to direct appropriate remedial action and shall do so after taking into consideration just and equitable relief to the employee and the best interests and effectiveness of the state service.
Section 5-202(b) appears to mandate that the ERB hearing panel only look to the reasonableness of the actual action taken by the employer in determining whether to sustain or deny the appeal. The statute does not direct the hearing panel to consider what other forms of discipline would have been reasonable. Absent a grant of authority to do so any substitute sanction meted out by the ERB would necessarily be void. State v. State Employees'Review Board, 231 Conn. 391, 406 (1994).
Moreover, subsection (d) of General Statutes § 5-202
makes clear that any remedial action by the review panel can be taken only after the hearing panel sustains an appeal. Subsection (d) provides as follows:
 Within ten days of the issuance date of a decision by a hearing panel sustaining an appeal, the appointing authority of the employee shall take such measures as are necessary to comply with the remedial action directed by the hearing panel.
When the two subsections are read together then, remedial action could be directed only if the ERB had concluded that the employer's action was unreasonable. Here, the ERB had denied the plaintiff's appeal, and accordingly, there was no authority for the ERB to direct any remedial action. The pertinent regulations support this interpretation. Section 5-201-16(c) of the Regulations of Connecticut State Agencies provides in pertinent CT Page 5967 part: "(4) Unless the action appealed from was arbitrary or taken without reasonable cause, the appeal shall be denied. (5) If the appeal is sustained, the panel shall direct appropriate remedial action taking into consideration just and equitable relief to the employee and the best interests and effectiveness of state service."
This court concludes then, that the ERB did not have the authority to substitute its judgment for that of the employer.
The plaintiff's final claim is that the ERB did not consider the plaintiff's years of service, his experience, or his unblemished record in its conclusion that dismissal from his position was warranted. The record reveals that the ERB heard extensive testimony concerning the foregoing. The plaintiff here is arguing the weight accorded to this evidence by the ERB. However, it was within ERB's discretion to apply whatever weight it deemed appropriate to the testimony and evidence presented. General Statutes § 4-183(j) provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." The plaintiff did have an excellent record prior to the subject incident. However, the fact that the ERB determined that the plaintiff's past exemplary record did not offset the subsequent serious misconduct does not make ERB's conclusion that dismissal was warranted arbitrary. The administrative directives which ERB found the plaintiff to have violated permit dismissal by the employing agency. Another administrative directive provides that the employer take into consideration the employee's past work record and years of service as well as the seriousness of the offense. Accordingly, ERB did not act arbitrarily in upholding the DOC conclusion that dismissal was warranted, since both ERB and DOG had taken into consideration the plaintiff's past work record and years of service. Notwithstanding the plaintiff's exemplary prior service, it is not the function of this court to substitute its judgment for that of the DOG and the ERB in this matter.
Based on the foregoing, this court finds that there is substantial evidence to support the ERB decision in this matter, and that ERB acted within its statutory mandate. Accordingly, the plaintiff's administrative appeal is dismissed.
Michael Hartmere, Judge CT Page 5968